626 A.2d 1235

**HISCOTT AND ROBINSON, Appellant,**

v.

**Jack F. KING.**

Superior Court of Pennsylvania.

Argued April 22, 1993.

Filed June 22, 1993.

William H. Robinson, Jr., Stroudsburg, for appellant.

Richard D. Gorski, Bethlehem, for appellee.

Before CIRILLO, KELLY and CERCONE, JJ.

CIRILLO, Judge.

Appellant Hiscott and Robinson, a law firm, appeals from a directed verdict[1] in favor of appellee Jack F. King (King) in

1. Hiscott and Robinson raised just one issue in its brief in support of its motion for post-trial relief, namely, whether it was appropriate for the trial court to grant a directed verdict. The trial court subsequently modified its decision and, by order dated November 30, 1992, entered a verdict for Hiscott and Robinson in the amount of $1,199.15 calculated to represent the fee owed to Hiscott and Robinson for its 8.27 hours spent on King's case, discussed *infra*. Hiscott and Robinson's appellate brief includes this November 30, 1992 order as the "order in question,"

an action brought by Hiscott and Robinson to recover fees for services rendered before the firm was discharged by King. We affirm.

King was injured as a result of an automobile accident in September, 1987. King subsequently employed attorney William H. Robinson of Hiscott and Robinson to represent him in a personal injury action against the tortfeasor. Hiscott and Robinson provided King with a contingency fee agreement which provided that it would receive a fee of either 33⅓% of all sums recovered if the matter settled prior to pre-trial conference, or 40% of all sums recovered if the case settled following the commencement of the pre-trial conference or of those sums recovered at trial. By Mr. Robinson's own testimony at trial, he spent a total of 8.27 hours on King's case.[2]

King became dissatisfied with Hiscott and Robinson's services and in September, 1988 he discharged the firm. Hiscott and Robinson then released King's file to Dennis P. Ortwein, Esq. (Ortwein), a personal injury lawyer retained by King. King entered into a new contingency agreement with Ortwein and Ortwein eventually negotiated a settlement, receiving payment from both the tortfeasor's liability policy and King's underinsurance coverage. The amount of the settlement totaled $105,000.00, $35,000.00 of which went to attorney Ortwein pursuant to the contingency fee agreement. Ortwein set aside $6,000.00 from his fees to cover any claim made by Hiscott and Robinson.[3]

Hiscott and Robinson subsequently filed suit against King to recover "a fair and equitable fee based upon the relative value of services performed." A jury trial ensued and, following the close of the evidence, the trial court directed a verdict

however, in its "statement of questions involved," primarily challenges the directed verdict.

2. Mr. Robinson's records indicate that these hours were spent preparing and filing a complaint, reviewing and mailing correspondence on King's behalf, reviewing medical bills, meeting with King and his wife and engaging in telephone conferences.

3. Hiscott and Robinson admitted at oral argument that it was aware of the $6,000.00 set aside for its benefit if it chose to accept this amount. The firm did not, however, find this to be adequate compensation.

for King on the ground that Hiscott and Robinson, through attorney Robinson's own testimony, admitted that he had represented King pursuant to a contingent fee agreement, entitling Robinson to no fee in the event that he failed to obtain a recovery on King's claim. Robinson had, in fact, recovered nothing for King.

Hiscott and Robinson filed post-trial motions challenging the trial court's entry of a directed verdict in favor of King. The trial court, pursuant to Pa.R.C.P. 227.1(a)(5), granted post-trial relief by entering an order "to resolve the issue of the nature and amount of compensation to be afforded to [Hiscott and Robinson] outside of the scope and terms of the contingent fee agreement." Specifically, the order was in the form of a verdict for Hiscott and Robinson in the amount of $1,199.15, which represented the 8.27 hours of work by Robinson at a fee of $145.00 per hour.

This appeal followed and Hiscott and Robinson raises the following issues for our consideration:

(1) Was it reversible error for the trial court to enter a directed verdict against Hiscott and Robinson?

(2) Was it reversible error for the trial court to exclude evidence of the services rendered by attorney Ortwein?

(3) Was it reversible error for the trial court to base its order, in part, on off-the-record facts? [4]

When deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the non-moving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony. *Cooke v. Travelers Ins. Co.*, 350 Pa.Super. 467, 504 A.2d 935 (1986). A directed verdict can only be granted where the facts are clear and there is no room for doubt. *Id.* On review, an appellate court can reverse only if an abuse of discretion or error of law which controlled the outcome of the case occurred. *Boyce v. Smith–Edwards–Dunlap Co.*, 398 Pa.Super. 345, 354, 580 A.2d 1382, 1386

---

4. The record belies Hiscott and Robinson's third issue on appeal, thus, it will not be addressed further.

(1990), *appeal denied,* 527 Pa. 639, 593 A.2d 413 (1991); *Bucchianeri v. Equitable Gas Co.,* 341 Pa.Super. 319, 491 A.2d 835 (1985). We find that the trial court did not abuse its discretion in entering the directed verdict.

 Hiscott and Robinson claims that the court erred in not allowing the jury the opportunity to determine the amount of compensation to which the firm was entitled. It is its position that the relative value of the services performed by both lawyers (*i.e.* William Robinson and Dennis Ortwein) provides the appropriate standard for this determination and that such value should not be limited to an hourly rate.

 Despite Hiscott and Robinson's many references to being dismissed "without cause," it has long been the law that a client has a right to discharge an attorney, with or without cause. *Commonwealth v. Scheps,* 361 Pa.Super. 566, 574–75, 523 A.2d 363, 367 (1987), *appeal denied,* 516 Pa. 633, 533 A.2d 91 (1987); *see Richette v. Solomon,* 410 Pa. 6, 187 A.2d 910 (1963); *Sundheim v. Beaver County Bldg. & Loan Ass'n.,* 140 Pa.Super. 529, 14 A.2d 349 (1940). The right of a client to terminate the attorney-client relationship is an implied term of every contract of employment of counsel, at least where the attorney has no vested interest in the case or its subject matter. *Scheps,* 361 Pa.Super. at 575, 523 A.2d at 367. In determining the method of compensating attorneys who are released from serving their clients in a case such as this one, we look to the rule set forth in *Sundheim, supra:*

> A client may terminate his relation with an attorney at any time, notwithstanding a contract for fees, but if he does so, thus making performance of the contract impossible, the attorney is not deprived of his right to recover on a quantum meruit a proper amount for the services which he has rendered.

*Id.,* 140 Pa.Super. at 533, 14 A.2d at 351; *accord Dorsett v. Hughes,* 353 Pa.Super. 129, 133–34, 509 A.2d 369, 371 (1986). *See also Lampl v. Latkanich,* 210 Pa.Super. 83, 231 A.2d 890 (1967) (discharged attorney may recover under quantum meruit); *Thole v. Martinog,* 56 Pa.Super. 371 (1914) (when client

through his own action makes it impossible for attorney to perform the contract, quantum meruit recovery is permitted).

■ It is clear from our review of the record that the contract for legal services providing for a contingent fee had been terminated at a time when, under its terms, there was nothing due to Hiscott and Robinson as compensation. Moreover, Hiscott and Robinson fails to cite any Pennsylvania case law to support its position that the relative workload of both attorneys should be compared and weighed by a jury in order to arrive at an appropriate amount.[5] The trial court, therefore, did not abuse its discretion in rendering a directed verdict in favor of King.

■ Furthermore, the trial court did not abuse its discretion when it granted post-trial relief to Hiscott and Robinson. In light of the case law set forth above, it is clear that Hiscott and Robinson is limited to a quantum meruit-based recovery. The hours spent by the firm on King's case were clearly admitted into evidence. There was no need, however, to use the jury simply for purposes of calculating the mathematically correct figure. Rather, the trial judge correctly considered the 8.27 hours spent on the King case at the $145.00 hourly fee charged by Hiscott and Robinson in arriving at the correct remedy. The trial court's post-trial relief order was a proper one; "courts have the inherent authority to enter any appropriate order." *Fiorenza v. Kohn,* 396 Pa.Super. 1, 577 A.2d 1384, 1386 (1990). *See* Pa.R.C.P. 227.1(a)(1) & (4), (5) (trial court has inherent authority to (1) order a new trial as to all or any of the issues; or ... (4) affirm, modify or change the decision or decree nisi; or (5) enter any other appropriate order). Furthermore, absent a clear abuse of discretion or an error of law which controlled the outcome of the case, we will not disturb a trial court's decision in this regard. *Fiorenza* at 4, 577 A.2d at 1386; *Butler v. Flo–Ron Vending Co.,* 383 Pa.Super. 633, 557 A.2d 730 (1989), *appeal denied,* 523 Pa. 646, 567 A.2d 650 (1989). Review of the record indicates that the

---

5. For this reason we are unpersuaded by Hiscott and Robinson's attempts to defend its position regarding the relative workload of both attorneys and, thus, find no merit to its second issue on appeal.

court did not abuse its discretion in issuing this order granting post-trial relief. The court has clearly set forth in its opinion its reasons for both the directed verdict and the subsequent modification of that verdict; it would be pointless to require a new trial.

Order affirmed.