## Biersdorf & Associates, P.C. v. Horner

C.P. of Lycoming County, No. 12-00,607

*Dan Biersdorf*, for plaintiff.
*Norman M. Lubin*, for defendant.

GRAY, *J.*, September 19, 2013—

## VERDICT

This matter arises out of a fee dispute between defendant Mary Horner and her former-counsel plaintiff Biersdorf & Associates, P.C. Defendant retained plaintiff to represent her in an eminent domain action filed by the Loyalsock Township School District for the taking of her property located on Four Mile Drive, Loyalsock Township, Lycoming County, Pennsylvania (Lycoming County

Tax Parcel No. 26-351-226). The court held a non-jury trial in this matter on September 16, 2013. Attorney Dan Biersdorf represented plaintiff at the time of the hearing, and he was plaintiff's sole witness. Attorney Norman M. Lubin represented defendant at the hearing; likewise, Ms. Horner was defendant's sole witness. Upon review of the parties' trial memorandums and after consideration of the testimony, the court hereby enters a verdict and judgment in favor of plaintiff and against defendant in the amount of $18,750.00.

## I. Findings of Fact

1. Defendant was a fee owner of real estate located on Four Mile Drive, Loyalsock Township, Lycoming County, Pennsylvania (Lycoming County Tax Parcel No. 26-351-226) (the "property").[1]

2. On September 10, 2001, Loyalsock Township School District (the "district") filed a declaration of taking to condemn the property (the "eminent domain" matter, proceeding, or action).[2]

3. Initially, defendant and her family proceeded in the eminent domain matter pro se.

4. On December 4, 2002, the district filed a praecipe with the court to deposit the initial offer of $450,000.00, with the Prothonotary's Office of Lycoming County.

5. On December 11, 2002, defendant and her family executed a Representation Agreement (the "agreement") with plaintiff Biersdorf & Associates,

---

1. Defendant owned this property in conjunction with her late-husband and late-mother-in-law.

2. See *Jayne Horner, Emil P. Horner, Jr., and Mary L. Horner v. Loyalsock Township School District*, No 06-00893 (Lycoming Co.).

P.C. This agreement provided that plaintiff would represent defendant and her family in the eminent domain proceeding "through any trial and evidentiary hearing before commissioners, a referee, or a judge...." Pl. Ex. 1.

6. The agreement provided that plaintiff's fee would be equal to 1/3 of the amount awarded to defendant and her family above the initial offer of $450,000.00. *Id.*

7. The agreement also provided that "appeals beyond the trial court stage [were] not covered by the contingent fee." *Id.* Plaintiff's appellate work rate was agreed upon as $250.00/hour. *Id.*

8. A one-day board of view hearing was held on October 6, 2005.

9. On March 28, 2006, the board of view filed a report in which it awarded defendant and her family damages totaling $573,000.00.[3]

10. On April 27, 2006, plaintiff filed an appeal on behalf of defendant and her family from the board of view report.

11. Mr. Biersdorf testified that the appeal was filed upon his recommendation.

12. The prothonotary's office incorrectly docketed the appeal to a new docket number. *See* pl. ex. 21.

13. On October 16, 2006, the court struck defendant's appeal because plaintiff failed to remedy the incorrect docketing situation. *See* pl. exs. 22 and 25.

---

3. The board of view damages award is $123,000.00, greater than the district's original offer.

14. Following an appeal to the Commonwealth Court, by order dated February 22, 2008, our Commonwealth Court reversed this court's striking of the appeal. *See* pl. exs. 26-28.

15. By letter dated December 16, 2008, defendant fired plaintiff. *See* pl. ex. 31.

16. On October 15, 2009, plaintiff filed an "Attorney Lien Notice" in defendant's eminent domain matter for legal services provided to defendant in the amount of $73,987.86. *See* def. ex. 7. By order dated October 23, 2009, the court ruled that plaintiff's lien had no legal effect. *See* def. ex. 8.

17. Plaintiff filed the instant matter against defendant and her family on March 19, 2012.[4]

18. Plaintiff alleges that it is due $72,554.73 in legal fees and $17,293.87 in prejudgment interest. *See* second amended complaint.

19. Mr. Biersdorf testified that he and/or his associate and/or paralegal and legal secretary spent 131 billable hours working on defendant's eminent domain case. *See* pl. ex. 35.

20. While plaintiff was performing work for defendant in her case, plaintiff did not properly document its billable hours, as the parties had a contingent fee arrangement.

---

4. Plaintiff's complaint was amended twice during the preliminary objections phase. Plaintiff's active complaint is its second amended complaint, filed December 5, 2011. However, the only claim standing in plaintiff's second amended complaint is the action in unjust enrichment. *See* order, Dec. 20, 2012.

21. Mr. Biersdorf testified that the reconstruction of hours that he provided to the court and entered as pl. ex. 35 was created in the summer of 2013 by himself and his staff.

22. The court finds that Mr. Biersdorf's testimony as to the time expended on defendant's case is not specific and borders on the line of speculative.

23. However, Mr. Biersdorf's testimony, corroborated somewhat by plaintiff's exhibits, supports plaintiff's argument that plaintiff expended substantial time on defendant's eminent domain case and that a reasonable amount of attorney's fees should be awarded to plaintiff.

24. Mr. Biersdorf testified that $250.00/hour is a reasonable attorney's fee rate for work performed in eminent domain cases. The court finds Mr. Biersdorf's testimony to be credible.

25. Mr. Biersdorf testified that plaintiff incurred $3,109.07 in legal expenses. *See* pl. ex. 33. These expenses include filing fees and charges for photocopies, long-distance phone service, postage, and Westlaw research, as well as reimbursements to Mr. Biersdorf for airline tickets and meals. *See id.*

26. The parties' representation agreement provides:

Client shall be liable and pay for any appraisal or other expert costs, any witness fees, and direct costs for trial, e.g., subpoenas, court reporters, etc., if they are necessary. This provision does not commit Client to incurring these costs at this time. That will only incur when Client evaluates a particular cost and independently decides later whether to incur it or not.

Any costs incurred by client are separate from the fee that the Law Firm is to receive from Client.

Pl. ex. 1.

27. Plaintiff failed to provide credible testimony that travel expenses were contemplated as part of those direct costs of trial that defendant agreed to pay at the time the parties entered into their agreement.

28. Plaintiff failed to provide credible testimony that the other expenses outlined in pl. ex. 33, including photocopy, long-distance phone service, and postage charges, were contemplated as part of those direct costs of trial that defendant agreed to pay.

29. Plaintiff shall not be awarded any expense outlined in pl. ex. 33.

## II. Conclusions of Law

1. Unjust enrichment is an equitable remedy. *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993), *aff'd without op.*, 637 A.2d 276 (Pa. 1994).

2. To pursue a claim in unjust enrichment, plaintiff must establish that it conferred benefits onto defendant, that defendant appreciated such benefits, and that defendant's acceptance and retention of these benefits, without payment to plaintiff, would be inequitable. *Id.*

3. The doctrine of unjust enrichment does not necessarily apply if defendant merely benefitted by the actions of plaintiff; unjust enrichment applies *only* if defendant's retention of these benefits without payment to plaintiff is *unjust*. *Id.*

4. When the court finds unjust enrichment has occurred, the law implies a contract between plaintiff and defendant. *Id.* This implied contract requires defendant to pay plaintiff an amount equal to the value of the services it conferred to defendant, i.e. that defendant make restitution to plaintiff in quantum meruit. *Id.*

5. In the instant matter, the court finds that plaintiff conferred benefits to defendant, that defendant accepted and retained these benefits, and that defendant's retention of these benefits without payment to plaintiff would be inequitable and unjust. The court bases this conclusion on the increase of $123,000.00 from the district's initial offer to defendant to the amount awarded by the board of view. This conclusion is also based upon the records and exhibits plaintiff submitted to this court at the time of this hearing.

6. When a client terminates its relationship with an attorney, making the performance of the parties' contract impossible, the attorney may recover in quantum meruit for the services that he provided to the client prior to the termination. *Sundheim v. Beaver County Building & Loan Assn.*, 14 A.2d 349, 351 (Pa. Super. Ct. 1940) (cited by *Hiscott and Robinson v. King*, 626 A.2d 1235, 1237 (Pa. Super. Ct. 1993), *appeal denied*, 642 A.2d 487 (Pa. 1994)). *See also Mager v. Bultena*, 797 A.2d 948, 955 (Pa. Super. Ct. 2002), *appeal denied*, 814 A.2d 678 (Pa. 2002).

7. Similar to unjust enrichment, quantum meruit is an equitable remedy. *See Feingold v. Pucello*, 654 A.2d 1093, 1094 (Pa. Super. Ct. 1995), *appeal denied*, 664 A.2d 975 (Pa. 1995).

8. Once a contractual relationship has been severed, quantum meruit theory requires any recovery to be based upon work performed on the contract prior to termination. *Mager*, 797 A.2d at 958.

9. The court finds that the parties' contractual relationship was terminated on December 16, 2008.

10. A quantum meruit compensation amount for a terminated attorney equates to the number of hours worked multiplied by a "fair fee." *Mager*, 797 A.2d at 957.

11. The court finds that $250.00/hour to be a fair fee for attorney's work performed in eminent domain cases.

12. A recovery under the theory of quantum meruit should not take into account a prior contingent fee agreement entered into by the parties. *See generally Mager*, 797 A.2d at 955-958.

13. The determination of attorney's fees has long been held as a difficult question. *See LaRocca Estate*, 246 A.2d 337 (Pa. 1968). In *LaRocca*, our Supreme Court held:

[t]he facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client

to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*Id.* at 339.

14. After analyzing plaintiff's exhibit 35, considering the testimony of Mr. Biersdorf and Ms. Horner, and bearing in mind the factors set forth in *LaRocca*, the court finds that plaintiff expended seventy-five (75) hours of reasonable, appropriate, billable time on defendant's eminent domain matter.

15. The court finds that plaintiff shall be awarded $18,750.00 in attorney's fees for the work performed on defendant's eminent domain case.

16. Plaintiff is not due prejudgment interest on this amount, not because the recovery is based in quantum meruit, but because the sum due to plaintiff was not sufficiently definite. *See Burkholder v. Cherry*, 607 A.2d 745, 747-48 (Pa. Super. Ct. 1992). The court bases this conclusion on the facts that that the parties' initial representation agreement was based upon a contingency fee and plaintiff did not reconstruct its billable time until the summer of 2013.

### III. Discussion

This matter revolved around a heated dispute between an attorney and his former client for services rendered with regard to the client's investment property located within Lycoming County. Defendant and her family were residents of New Jersey, while plaintiff's law firm's central office was based in Minnesota. Defendant's late-husband located plaintiff's law firm on the internet and retained

plaintiff on the theory that plaintiff's firm specialized in eminent domain law. Defendant testified that when her family retained plaintiff, they believed plaintiff's firm to be based in Philadelphia, when, in fact, plaintiff's firm only has a shell office in Philadelphia and Mr. Biersdorf, himself, is the only attorney within the firm with a license to practice in Pennsylvania. As defendant had been involved in multiple eminent domain cases in the past, both defendant and Mr. Biersdorf testified that the parties disagreed on plaintiff's handling of defendant's eminent domain case. Following an appeal to our Commonwealth Court based upon an error in our county's prothonotary's office and the failure of plaintiff to remedy the situation, defendant terminated her professional relationship with plaintiff.

Now, it is for this court to determine whether defendant would be unjustly enriched by retaining benefits conferred upon her by plaintiff without payment to plaintiff. The court finds that defendant would be so unjustly enriched. There is no doubt that defendant benefitted from plaintiff's work in receiving an increased recovery from the board of view. However, following this finding, the court is put in the difficult place of determining the amount of attorney's fees to be awarded to plaintiff.

Mr. Biersdorf testified on behalf of plaintiff. He provided to this court that he did not calculate his firm's billable hours during defendant's eminent domain case because the parties had a contingency fee arrangement in place. Therefore, Mr. Biersdorf testified that he recreated his billable hours log during the summer of 2013. This log was entered into evidence and admitted as pl. ex. 35. Mr. Biersdorf testified that he and his staff performed 131 billable hours on defendant's case. These hours spanned

from plaintiff's initial retention of the case on (or slightly prior to) December 11, 2002, through the filing of the appeal with the Commonwealth Court, approximately June 4, 2008. These hours included reaching a stipulation with the district, preparing the case for the board of view, deciding whether to appeal the board of view report, filing the appeal, and conferencing regarding the incorrect docketing of the appeal. The court finds incredible and highly speculative Mr. Biersdorf's testimony that plaintiff spent 131 billable hours on defendant's case. That amount of billable time seems excessive for an attorney experienced in eminent domain matters. After considering the testimony and evidence presented by the parties during the hearing, in addition to the factors set forth in *LaRocca, supra,* the court believes that seventy-five (75) hours is a more accurate estimate of the billable time plaintiff spent on defendant's eminent domain matter. Multiplying this time by plaintiff's proffered and accepted fair fee of $250.00/hour, plaintiff is due the amount of $18,750.00 from defendant for services rendered in her eminent domain case.

The court enters the following order.

## ORDER

And now, this 19th day of September, 2013, following a non-jury trial in the above-captioned matter, it is hereby ordered and directed that verdict and judgment is entered in favor of plaintiff and against defendant in the amount of $18,750.00.