J-A34045-14

2016 PA Super 2

| ANGINO & ROVNER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JEFFREY R. LESSIN & ASSOCIATES, ET AL | |
| Appellee | No. 941 MDA 2014 |

Appeal from the Order entered May 27, 2014
In the Court of Common Pleas of Dauphin County
Civil Division at No: 2012-CV-08019-CV

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STABILE, JJ.

DISSENTING OPINION BY STABILE, J.:          **FILED JANUARY 05, 2016**

I respectfully dissent from the learned Majority's decision because it fails to enforce a termination provision contained in a duly executed contingency fee agreement between Angino and Zarreii.[1]  The Majority believes that attorneys are prohibited *per se* from including a fee recovery provision in contingency fee agreements that governs the termination of the attorney-client relationship prior to the occurrence of the contingency.  Thus, it is the Majority's conclusion that discharged attorneys, like Angino, are

---

[1] It is worth noting that Zarreii limits his challenge to Angino's demand for payment under the Agreement to the argument that Angino is entitled only to a *quantum meruit* claim for services.  Thus, I will not address any other defenses or rules that might affect the ability of counsel to collect under a termination provision in a contingent fee agreement.

entitled only to the equitable remedy of *quantum meruit* for services rendered to former clients. I find no support in our law for this limitation of remedies where a termination provision is included in a contingency fee agreement and that provision is not challenged and established to be either excessive or unconscionable.

Contrary to the Majority's view, it is well-settled that a claim premised on *quantum meruit* may be asserted only when "one sounding in breach of express contract is not available." **Shafer Elec. & Const. v. Mantia**, 96 A.3d 989, 995-96 (Pa. 2014). It is undisputed that the issue in this case is not whether Angino is entitled to payment for services rendered to Zarreii or whether Zarreii is liable to pay for the services received. Rather, as the Majority recognizes, the issue presently before us is whether an attorney only has resort to *quantum meruit* for a fee recovery even where a contingency fee agreement, like the one at issue here, contains a termination provision governing the termination of the attorney-client relationship *prior* to the occurrence of the contingency. After a careful review of applicable law, I conclude that attorneys are not precluded *per se* from providing a termination fee provision in a contingent fee agreement. Our case law does not dictate that counsel, upon termination by a client, only has resort to *quantum meruit* in a contingent fee case when a termination provision has been agreed to between the parties. Accordingly, I disagree with the Majority's decision and would reverse the trial court's

order granting Zarreii's and denying Angino's motion for partial judgment on the pleadings.

Briefly, Angino seeks to collect its fee from Zarreii based on the termination provision of the Agreement. The termination provision of the Agreement, which Zarreii duly executed, provided in pertinent part that Zarreii agreed "to pay or direct [his] new attorney to pay as a fee 20% of the gross recovery" to Angino in the event of a successful outcome in the case. Contingency Fee Agreement, 5/21/07, at ¶ 5. Thus, only the occurrence of the condition precedent, *i.e.*, resolution of the case favorable to Zarreii, would trigger the percentage fee outlined in the termination provision of the Agreement. It is uncontested in the case *sub judice* that Zarreii indeed settled his case through representation by Lessin for a substantial amount of money. As a result, as Angino argues, the settlement of Zarreii's case triggered Angino's right to receive payment for services under the termination provision of the Agreement.

In **Capek v. Devito**, 767 A.2d 1047 (Pa. 2001), our Supreme Court entertained a fee dispute arising out of a contingency fee agreement containing a termination provision. A client entered into a contingency fee agreement with the appellant (an attorney) in connection with a personal injury action. Subsequently, the appellant agreed to a settlement figure of $275,000.00. The client refused to accept it because the settlement was reached without the client's authorization. Following the appellant's unsuccessful efforts to confirm the settlement, the client terminated the

appellant and retained new counsel. The client ultimately reached a settlement in excess of four million dollars. The appellant filed an action to recover his fees under the contingency fee agreement. In particular, the appellant sought $86,500.00 in fees because that figure represented thirty percent of the settlement offer that he had negotiated with the defendant. Because the agreement contained a "no recovery no fee" clause, the trial court entered summary judgment in favor of the client because, *inter alia*, the appellant had not obtained relief on behalf of the client. This Court affirmed the trial court's ruling. Our Supreme Court, however, disagreed. In describing the terms of the agreement at issue, the Court noted:

> [I]t is evident from the Agreement that the parties intended to provide for payment to [the appellant] in the event of two possible outcomes: (1) when it is the case that [the appellant] is retained until resolution of the litigation, and (2) when the Agreement is terminated **prior** to resolution of the litigation. In the event that [the appellant] is retained until the claim's resolution, the "no recovery no fee" provision (in conjunction with the 30% contingency fee clause) establishes that [the appellant] will be paid 30% of any amount [the client] receives, only if there is recovery by suit or settlement; if there is no recovery, then [the client] pays no fee. In contrast, **in the event that the Agreement is prematurely terminated, the liquidated damages clause establishes that [the appellant] will receive the greater of 30% of a negotiated settlement offer or a fee based upon his prevailing rate**.

*Id.* at 1050 (emphasis added). Using contract principles to construe the agreement, the Court concluded that this Court's interpretation of the agreement "**improperly nullified** the . . . liquidated damages [(or termination)] provision, which addressed the specific outcome that occurred in this case—**a termination of the** [a]**ppellant's services**." *Id.* (emphasis added). In other words, the Supreme Court did not determine the

termination provision to be unenforceable or unlawful. Instead, the Court remanded the matter to the lower courts to consider, *inter alia*, outstanding issues relating to whether the agreement was conscionable and whether it complied with the Rules of Professional Conduct. ***Id.*** at 1051 n.4.

Like the attorney in **Capek**, Angino premises its contract claim on Zarreii's breach of the termination provision contained within the parties' contingency fee agreement. The parties do not contest that Zarreii engaged Angino to represent him, signed a contingency fee agreement featuring a termination clause, terminated representation by Angino, hired Lessin, and subsequently refused to pay Angino for legal fees following the settlement of the underlying case. Thus, what the parties contest is the enforceability of the termination provision of the Agreement. As noted earlier, in **Capek**, our Supreme Court had an opportunity to assess the enforceability or validity of a termination provision in a contingency fee agreement. Although the Court was not asked to approve explicitly the use of such a provision in contingency agreements, the Court did so tacitly by upholding counsel's right to claim fees under the termination provision. The Court held the attorney could proceed on his breach of contract claim triggered by the client's failure to honor the termination provision, so long as the lower courts determined the agreement was not unconscionable or against the Rules of Professional Conduct. Unlike the client in **Capek**, however, Zarreii here ***did not challenge*** the Agreement as unconscionable or violative of the Rules of Professional Conduct before the trial court. Nonetheless, consistent with our

Supreme Court's decision in *Capek*, I conclude that Angino properly based its contract claim on Zarreii's alleged breach of the termination provision of the Agreement. Accordingly, given the facts of this case, I cannot agree with the Majority's conclusion that Angino's recovery in this case is limited to *quantum meruit*.

Notwithstanding the *Capek* decision, the Majority insists that discharged attorneys are entitled only to *quantum meruit* relief and that termination provisions *per se* amount to a penalty imposed upon former clients. The Majority characterizes termination provisions as penalties, because it believes they "inhibit the client from engaging another lawyer to pursue his claim." Maj. Op. at 13. Although the Majority recognizes the importance of contingency fee agreements generally and the salient purpose they serve specifically, it suggests that attorneys hold an unfair advantage vis-à-vis their clients, resulting in the possibility that attorneys could impose unfair terms of representation. Thus, to protect clients, the Majority has embraced the equitable remedy of *quantum meruit*.

In applying *quantum meruit sub judice*, however, the Majority recognizes that a strict adherence to *quantum meruit* is unfair. Citing Judge Joyce's concurring opinion in *Magar v. Bultena*, 797 A.2d 948 (Pa. Super. 2002), *appeal denied*, 814 A.2d 678 (Pa. 2002), the Majority proposes a holistic approach to calculating *quantum meruit*. *Id.* at 15. Specifically, the Majority suggests that more than "an hours and expenses *quantum meruit*" must be established to determine Angino's fees. In so doing, the Majority

recognizes Angino's efforts and contributions to Zarreii's ultimate recovery in this case. The issue here therefore, is not whether a termination fee is permissible, but rather whether the basis for that fee may be agreed to between the parties prior to termination of a representation.

I emphasize I agree with the Majority that clients hold an inalienable right to discharge their attorneys regardless of any contractual arrangements between the parties, and that in doing so, a client does not stand in breach of a representation agreement. I, however, disagree with the Majority that from this it naturally follows that attorneys do not have a right to impose a reasonable termination provision in a contingency fee agreement.[2] The right to terminate a representation without breach exists apart from an independent obligation to honor a payment term, the failure of which may establish a breach. Instantly, the termination provision provides that 20% of Zarreii's arbitration award be due to Angino. As noted, Zarreii does not challenge the amount due to Angino. To the extent the Majority invokes the Rules of Professional Conduct, those rules have not been raised or relied upon by Zarreii to challenge the Agreement. Moreover, I must underscore the fact that this case did not arise within a disciplinary context. "Ethical considerations are aspirational in character" and do not represent

---

[2] If a former client deems a termination provision to be unreasonable, he or she always has a right to challenge the same. The ability of former clients to challenge an agreement necessarily acts as a deterrent for attorneys to avoid unreasonable termination provisions.

mandatory laws. *Eckell v. Wilson*, 597 A.2d 696, 698 n.3 (Pa. Super. 1991). Nonetheless, it certainly is conceivable that using the Majority's own calculation of *quantum meruit*, Angino could receive 20% or more of the arbitration award.

In support of *quantum meruit*, the Majority primarily relies upon *Hiscott & Robinson v. King*, 626 A.2d 1235 (Pa. Super. 1993), *appeal denied*, 644 A.2d 163 (Pa. 1994); *Fowkes v. Shoemaker*, 661 A.2d 877 (Pa. Super. 1995), *appeal denied*, 674 A.2d 1072 (Pa. 1996); and *Mager*. The Majority's and Zarreii's reliance on *Mager*, *Fowkes*, and *Hiscott* is inapposite, and those cases are readily distinguishable. In *Mager*, a law firm employed an attorney who entered into a contingency fee agreement with a client in a *qui tam* case involving the client's former employer. After the attorney left his prior law firm to start his own firm, the client terminated his representation by the law firm. The client, however, continued to be represented by the attorney who had departed from the law firm. The attorney ultimately settled the client's case and received a contingency fee for his services. Thereafter, the law firm sued, among others, its former attorney and the client seeking the full contingency fee the attorney had earned in the case.

On appeal, this Court vacated the trial court's judgment that the law firm was entitled to 25% of the contingency fee and remanded the matter to the lower court to enter a *quantum meruit* fee based on a computation using a fair hourly rate and number of hours worked. In so doing, this Court

recognized that the contingency fee agreement at issue did **not** contain a termination provision that would have triggered a breach of contract claim. *See Mager*, 797 A.2d at 952, 954 n.8 (noting that "[n]o provision was made in the [agreement] for termination of representation by the client **prior** to the resolution of the case"). The *Mager* Court noted that "[b]ecause the contingency fee agreement did not provide for any monies to be paid if the [law firm] was terminated **prior** to a verdict or settlement in the action, the [law firm] has no claim against [its former client] for breach of contract." *Id.* (emphasis added).

Stated differently, given the circumstances in *Mager*, we determined that to hold the client to the contingency fee agreement whose provisions did not survive the termination of the attorney-client relationship would amount to the courts' reviving an agreement that "no longer existed," when the client discontinued his representation by the law firm prior to the occurrence of the contingency. *Id.* at 957. This Court, therefore, concluded the law firm was entitled only to recovery of fees in *quantum meruit* for the services rendered to the client until the time when the client severed the relationship. *Id.* at 957 ("While the termination of the [agreement] by [the client] created an immediate right in [the law firm] to compensation for all work performed and costs incurred pursuant to that [agreement], that right included only *quantum meruit* compensation which is to be calculated based on the number of hours worked multiplied by a fair fee.").

Finally, to the extent we remarked in **Mager** that "[a]n attorney . . . does not acquire a vested interest in a client's action," for it would amount to a penalty against the client's right to terminate the attorney-client relationship, **id.** at 958, such remark was within the factual context of that case.  Our remark was premised on the recognition that, because the contingency triggering the fee under the agreement was not satisfied at the time of termination, the law firm was not entitled to recovery on a contractual basis.

In **Fowkes**, terminated attorneys initiated a *quantum meruit* action against the client's subsequent attorney, after the successor attorney settled the client's personal injury case.  **See Fowkes**, 661 A.2d at 879.  In affirming the trial court's grant of summary judgment in favor of the subsequent attorney, this Court concluded the terminated attorneys' *quantum meruit* action lay properly against their former client and not the subsequent attorney.  **See id.**  Additionally, this Court determined the trial court did not abuse its discretion in denying the terminated attorneys' request to amend their complaint to include the former clients, because their *quantum meruit* claim against the former clients was time-barred.  **See id.** at 880.  The circumstances in **Fowkes** are inapposite to the present action.

In **Hiscott**, terminated attorneys filed a complaint against their former client, who settled the case through the engagement of a subsequent attorney, to recover "'a fair and equitable fee based on the relative value of services performed.'"  **Hiscott**, 626 A.2d at 1236.  The terminated attorneys

- 10 -

entered into a contingency fee agreement with their former client, which provided for percentage fees to the attorneys depending on when the case settled. *Id.* The trial court granted a directed verdict in favor of the former client because under the fee agreement the terminated attorneys were not entitled to collect a fee. Thereafter, the terminated attorneys filed post-trial motions challenging the trial court's ruling. The trial court granted the post-trial motion by entering an order "'to resolve the issue of the nature and amount of the compensation to be afforded to [the terminated attorneys] *outside* of the scope and terms of the contingency fee agreement.'" *Id.* Thus, the trial court ordered relief in *quantum meruit* to the terminated attorneys, calculated by multiplying the hourly rate by the number of work hours. *Id.*

On appeal, we recognized that under the terms of the contingency fee agreement, the terminated attorneys were not entitled to collect a fee because the contingency contemplated by the agreement was not met. *See id.* at 1237 (noting the client terminated the fee agreement "when, under its terms, there was nothing due to [the terminated attorneys] as compensation"). We, therefore, concluded, *inter alia*, that the trial court did not abuse its discretion in rendering a directed verdict in favor of the former client. *See id.* Moreover, we concluded that the trial court also did not abuse its discretion in granting the terminated attorneys post-trial relief in the nature of *quantum meruit*, which is all they were entitled to in that case. *See id.* at 1237-38 (noting that "[i]n light of the case law set forth above, it

- 11 -

is clear that [the terminated attorneys are] limited to a *quantum meruit*-based recovery").

Here, unlike the fee agreements in **Mager**, **Fowkes**, and **Hiscott** that did not contain a termination provision, Angino sought relief based on Zarreii's alleged breach of the Agreement occasioned by Zarreii's refusal to honor the termination provision. In **Mager**, **Fowkes**, and **Hiscott**, the appellants sought relief in *quantum meruit* because there was no contractual right to relief.[3] It bears repeating that a claim anchored in *quantum meruit* may be asserted only when one sounding in contract is unavailable. **See Shafer Elec.**, 96 A.3d at 995-96. As noted above, consistent with our Supreme Court's decision in **Capek**, I conclude Angino asserted a colorable right to relief under the termination provision of the Agreement. Therefore, the case *sub judice* is distinguishable from our decisions in **Mager**, **Fowkes**, and **Hiscott**. Additionally, I note that I am unable to find any support in our case law that prohibits *per se* a contingent fee agreement from providing for a termination fee prior to the occurrence of a fee contingency.

In light of my conclusion that, under the circumstances of this case, Angino is entitled to pursue recovery of its fees in accordance with the termination provision of the Agreement, I next address the legal question

---

[3] Even if the statute of limitations had not run in **Fowkes**, the facts of that case do not indicate that the terminated attorneys sought to bring a breach of contract action against their former client. As stated, they merely sought to include the former client in their *quantum meruit* action.

whether Zarreii indeed breached the Agreement. It is settled that "[t]hree elements are necessary to plead properly a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." **Omicron Sys., Inc. v. Weiner**, 860 A.2d 554, 564 (Pa. Super. 2004) (citations omitted).

In the instant case, based on the pleadings, I observe Zarreii does not contest the existence or validity of the Agreement or that a breach thereof has occurred. As noted earlier, the parties do not contest that Zarreii engaged Angino to represent him, signed a contingency fee agreement containing a termination provision, terminated representation by Angino, hired Lessin, and subsequently *refused* to pay $107,130.00 to Angino for legal fees following the settlement of the underlying case. I agree with Angino that, in so refusing, Zarreii breached the termination provision of the Agreement, which obligates Zarreii to pay a 20% fee to Angino upon the resolution of the UIM case. Accordingly, I conclude Zarreii breached the Agreement and Angino was entitled to have judgment on the pleadings entered in its favor.

In sum, unlike the learned Majority, I hold that the trial court erred in concluding that once a client terminates representation by a law firm prior to the occurrence of the fee contingency, the terminated law firm may recover its fees only in *quantum meruit*, regardless of any termination provision in a contingency fee agreement. Based on Angino's properly pursued contractual

claim, I conclude Zarreii breached the Agreement when he failed to pay to Angino 20% (or $107,130.00) of his $535,650.00 arbitration award.

Accordingly, I would reverse the trial court's order and remand the case for further proceedings.