J-A11035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| TOMASKO & KORANDA, P.C., RONALD T. TOMASKO, AND MICHAEL KORANDA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| IRA H. WEINSTOCK, P.C. | |
| Appellee | No. 116 MDA 2018 |

Appeal from the Order Entered December 27, 2017
In the Court of Common Pleas of Dauphin County
Civil Division at No: 1997 EQ 5402

BEFORE:  BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                **FILED: NOVEMBER 5, 2019**

Appellants, Tomasko & Koranda, P.C., and Ronald T. Tomasko[1] appeal from the December 27, 2017 accounting order directing Appellants to distribute $3,900.00 to Appellee, Ira H. Weinstock, P.C.  We affirm.

The record reflects that Tomasko and Koranda were employees of Appellee, a law firm, prior to January 3, 1997, on which date they formed their own law firm.  On January 16, 1997, Appellants commenced this equity action (the "Equity Action") with an emergency petition to compel transfer of files of clients who chose to have Appellants continue to represent them.  On January 21, 1997, the trial court ordered Appellee to transfer several files, and on February 2, 1997, the trial court ordered Appellants to escrow 40% of the

---

[1]  Michael Koranda is deceased.

"settlement resolution" of each transferred case. On January 6, 1998, the trial court entered an order directing that Appellee receive 75 percent and Appellant receive 25 percent of the funds in escrow.[2] The trial court also ordered cessation of payments into escrow and directed that for "all settlements occurring on or after October 21, 1997, on files which were transferred pursuant to the February 6, 1997 order, [Appellants] shall pay 30% of the fees directly to [Appellee]. [Appellants] will retain 70% of the fees for its own use." Order, 1/6/98. "The distribution of fees subsequent to October 21, 1997, shall be without prejudice to either party to subsequently litigate the actual interest of either side in the fees." *Id.* As we will discuss in more detail below, the parties have disputed the extent to which Appellants complied with their post-October 21, 1997 payment obligations. *See* Appellee's Motion for Contempt, 1/19/99; Appellants' Answer to Motion for Contempt, 2/4/99.

This action has proceeded alongside Appellee's lawsuit against Appellants (the "Action at Law"), in which Appellee alleged causes of action against Appellants for interference with contractual relationships, unjust enrichment, and quantum meruit, among others. One such contractual relationship was with Cathy Wamsley, a client of Appellee who chose to have Appellants represent her after their departure. In August of 1997, a worker's

_____

[2] This disbursement created a 70/30 split between Appellants and Appellee.

compensation judge approved a payment to Wamsley of $65,000 in settlement of a wage loss claim.[3] The worker's compensation judge also approved a $13,000 attorney's fee to Appellants (the "Wamsley Fee"). Appellee claimed it was entitled to the entire Wamsley Fee in light of the hours and expenses incurred in that case prior to Appellants' departure. The trial court ordered that the entire Wamsley Fee be placed into escrow, where it remains, pending final resolution of this appeal. The Action at Law languished for years without activity, and the trial court ultimately entered a judgment of *non pros* on April 4, 2014. This Court affirmed in an unpublished memorandum filed on July 26, 2016.

On January 13, 2017, after the final resolution of the Action at Law, Appellants filed a motion for accounting and return of escrowed funds in this Equity Action. Appellants seek the return of all money paid to Appellee in connection with the February 2, 1997 and January 6, 1998 orders. They also seek the entirety of the Wamsley Fee, which is the only fee remaining in escrow. In the order on appeal, the trial court directed that Appellee receive 30% ($3,900.00) of the Wamsley Fee. The trial court did not order that any other funds change hands, concluding that fee and settlement disputes related to the transferred files had long since been resolved, and no funds other than the Wamsley Fee remained in escrow. This timely appeal followed.

---

[3] Appellants represent that the medical expense portion of Wamsley's claim remains pending. Appellants' Brief at 19.

Appellants present two questions:

A. Did the trial court err, as both a matter of law and fact, in not ordering [Appellee] to account for all monies received pursuant to the trial court's various escrow orders after [the Superior Court's] order filed July 26, 2016 in the matter of [***Ira H. Weinstock, P.C. v. Tomasko***, 2016 WL 4919464 (Pa. Super. July 26, 2016) (unpublished memorandum)]?

B. Alternatively, did the trial court err, as both a matter of law and fact, in awarding [Appellee] an 'origination' fee in a worker's compensation matter that had been settled in part by [Appellants] back in 1997 when a worker's compensation judge had actually heard testimony and reviewed documentary evidence on the matter and circulated a decision, dated November 10, 1999, that concluded that [Appellee] had been <u>overpaid</u> for any and all legal representation in the matter?

Appellants' Brief, at 2-3 (underscoring in original).

We conduct our review as follows:

In equity matters, appellate review is based on a determination by the appellate court of such questions as whether (1) sufficient evidence supports the findings of the judge; (2) the factual inferences and legal conclusions based on those findings are correct; [and] (3) there has been an abuse of discretion or an error of law. Generally, in an appeal from a trial court sitting in equity, the standard of review is rigorous. The function of this Court on an appeal from an adjudication in equity is not to substitute its view for that of the lower tribunal; our task is rather to determine whether a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal.

***Omicron Sys., Inc. v. Weiner***, 860 A.2d 554, 557–58 (Pa. Super. 2004).

First, Appellants argue that the trial court should have forced Appellee to return the money Appellee received pursuant to the trial court's orders of February 2, 1997 and January 6, 1998 in light of the *non pros* in the Action at Law. We begin with a look at the text of the order on appeal:

- 4 -

> AND NOW, this 25th day, December, 2017,[4] upon consideration of [Appellants'] Motion for Accounting and Return of Escrow Funds […] and an attempt by this court to put to rest the long extended contention between the parties, HEREBY orders the distribution which arises from this court's initial segregation of amounts awarded as attorney fees from [the Equity Action] to reflect the court's then intended financial resolution to begin at a point of the acknowledged origination basis of 30% be assessed to be directed to [Appellee], and that any additional amounts to be determined and/or resolved by the then litigation or settlement. Given the *non pros* being entered, any amounts more have been resolved. Accordingly, this Court directs $3,900.00 (30% of $13,000) be distributed to [Appellee] and the remaining balance to [Appellants].

Order, 12/27/17.

We glean several important points from the trial court's order. First, the trial court's January 6, 1998 order—in which the court directed disbursement of escrowed money and directed that, thereafter, Appellants would pay Appellee 30% of the attorney's fees from the transferred files—represented the court's "then intended financial resolution" based on "the acknowledged origination basis of 30%." *Id.* Second, the Action at Law (*i.e.*, "the then litigation") would resolve any dispute regarding the fairness of the 30% origination credit in a specific case. Third, one such disputed amount was the Wamsley Fee, to which both parties presently claim a 100-percent interest. Fourth, given the *non pros* in the Action at Law, Appellee could not recover more than its 30% origination credit from the Wamsley Fee. Finally, given the foregoing, the trial court divided the Wamsley Fee according to the

---

[4] The order was docketed on December 27, 2017.

previously established 70/30 formula and declared the matter at an end. To obtain relief under the rigorous standard of review applicable to the decision of an equity court, Appellants must establish that the court, upon due consideration of all available evidence, could not reasonably have reached this conclusion. In our view, Appellants have failed.

Legally, Appellants' challenge to the trial court's order rests entirely on the proposition that an equity award cannot stand if there is no evidence in the record to support it. Appellant's Brief at 13, 16 (citing **Lilly v. Markvan**, 763 A.2d 370 (Pa. 2000)). In **Lilly**, an adverse possession case, the Pennsylvania Supreme Court partially vacated a finding of adverse possession where there was no evidence the claimants ever occupied a half-acre portion of the real estate in dispute. Here, in contrast, the trial court found that the parties acknowledged a 30% origination credit payable to Appellee for transferred files, and the fact that Appellants acted in accord with that arrangement—without objection, appeal, or any apparent insistence that all disputed amounts remain in escrow until a full and final resolution of all pending litigation—supports the trial court's finding. We glean from the order on appeal and the parties' course of conduct that the adequacy of the 30%

credit, as to certain cases, was in dispute in the Action at Law, particularly in Appellee's quantum meruit and unjust enrichment claims.[5]

A review of the parties' competing contempt and sanction motions, filed in early 1999, illustrates the parties' dispute. Appellee filed a motion for contempt on January 19, 1999, alleging that Appellants were failing to forward 30% of all incoming fees from transferred cases in accord with the trial court's January 6, 1998 order. Appellants, in their February 4, 1999 answer, documented their pre- and post-October 21, 1997 compliance with the trial court's fee distribution scheme. Appellants' Answer to Motion for Contempt, 2/4/99, at Exhibits A-F. Specifically, Appellants categorized clients into contingent fee clients, hourly clients, worker's compensation clients, and clients allegedly not subject to the trial court's orders. *Id.* Appellants claimed they paid Appellee in full for settled contingent fee cases. *Id.* at 3. For hourly clients, Appellants alleged Appellee had billed the clients for services rendered prior to the transfer of the case to Appellants, and therefore had been compensated in full. *Id.* at 3-4. In a cross petition for contempt and/or sanctions filed on February 5, 1999, Appellants claimed Appellee failed to provide itemized statements (time spent and money received from certain clients) in support of its claims of compensation due and owing from

---

[5] *See Hiscott and Robinson v. King*, 626 A.2d 1235 (Pa. Super. 1993) (holding that an attorney hired on a contingent fee basis and dismissed prior to settlement may recover in quantum meruit for the time and expenses devoted to the case), *appeal denied*, 644 A.2d 163 (Pa. 1994).

Appellants. Appellants' Cross-Petition for Contempt, 2/5/99. The parties also disputed the appropriate division of proceeds in cases that settled shortly after Appellants' departure from Appellee. The trial court ultimately denied all petitions and cross petitions for sanctions in an order dated April 8, 2000.[6]

Regardless of the relative merit of either party's position in these 20-year-old motions, they illustrate that Appellants paid Appellee what they believed they owed, and declined to pay what they believed they did not owe. To the extent Appellants argue that the trial court's January 6, 1998 order permitted them to make payment subject to a reservation of rights,[7] Appellants never have established any right to recoup prior payments. Appellants would have us conclude that Appellee's failure in the Action at Law, in and of itself, required them to remit all monies received pursuant to the orders in this Equity Action. The record does not support this claim. While Appellee failed to establish, through the Action at Law, that it was entitled to more than 30%, Appellants never established that Appellee was entitled to less. Appellants filed a counterclaim in the Action at Law, but the record before us does not divulge its particulars. Appellants obtained a *non pros* in the Action at Law rather than litigate the merits. Given the state of the record

---

[6] On October 30, 2001, this Court affirmed, concluding that an order that made no finding of contempt and imposed no sanctions was not appealable.

[7] We observe that there is nothing in the record to support a conclusion that the pre-October 21, 1997 payments were made subject to a reservation of rights.

and the parties' course of conduct during this extensive litigation, we conclude the trial court acted reasonably in leaving the parties as it found them with respect to all prior disbursements.

In hope of avoiding this conclusion, Appellants reference an order, time stamped April 21, 2000, providing that "after an extended period of time has passed for completion of discovery on the underlying main action, this court's orders directing distribution/escrow of contested file claims are hereby rescinded. All monies heretofore escrowed are to remain escrowed until further order of this court." Order, 4/21/00. We do not believe this order supports Appellants' argument for repayment of amounts previously disbursed. Rather, it simply required that all amounts in escrow remain there pending the resolution of the "underlying main action," *i.e.*, the Action at Law. The Action at Law ended with neither party prevailing on any claim against the other. At the time of the April 21, 2000 order (and at present), the only money in escrow was the Wamsley Fee. The April 21, 2000 order therefore has no bearing on Appellants' claimed entitlement to remittance of prior disbursements.

Regarding the Wamsley Fee, Appellants claim in their second argument that the trial court erred in awarding Appellee a 30% share because a worker's compensation judge concluded that Appellee had been overpaid in connection with the Wamsley matter. By letter dated May 15, 1997, Appellants' counsel offered to place 40% of the Wamsley fee in escrow, in accord with the

governing trial court order as of that date. Appellants' Brief in Support of Release of All Escrowed Attorneys' Fees, 3/15/17, at Exhibit B. By letter dated May 29, 1997, Appellee declined and demanded that the full Wamsley Fee be placed in escrow. *Id.* at Exhibit C. The parties disputed the issue before the Bureau of Worker's Compensation, which found, in a decision issued on November 10, 1999, that Appellee was not entitled to any portion of the Wamsley Fee. *Id.* at Exhibit D. The Bureau noted that Appellee, primarily by and through Appellant Koranda, represented Wamsley in her worker's compensation matter from October 21, 1991 through December 30, 1996. *Id.* at Exhibit D, page 2-4. On July 2, 1997, Wamsley agreed to a settlement, negotiated by Appellant Koranda, of her compensation claim. *Id.* at Exhibit D, page 5. The Bureau found that Appellee played no role in the settlement negotiation. *Id.* The Bureau also found that Appellee had received over $10,000.00 in fees in the Wamsley matter and was not entitled to further compensation.[8] *Id.* at Exhibit D, page 5-9.

The record, therefore, fully supports Appellants' claim that they prevailed in this fee dispute in the worker's compensation matter. But Appellants do not explain why the decision from the Worker's Compensation Bureau binds the trial court in this Equity Action. Notably, the trial court, at

---

[8] Appellee was further ordered to remit a payment of $519.84 that it received after Wamsley terminated Appellee's representation. *Id.* at Exhibit D, page 4, 9.

the hearing on the parties' competing sanctions motions, told the parties it did not believe it would be bound by the Bureau's decision. N.T. Hearing, 9/28/99, at 21. Moreover, the issue of origination credit was not before the Worker's Compensation Bureau. Appellants have failed to establish that the outcome of the fee dispute before the Bureau has any bearing on the outcome here.

For reasons we have already explained, Appellee's failure in the Action at Law did not preclude application of the trial court's 70/30 fee division. Presumably, Appellants could have relied on the worker's compensation decision in support of a counterclaim in the Action at Law, had they chosen to litigate that action on the merits. Instead, the parties proceeded in accord with the trial court's 70/30 formula with neither side successfully establishing another appropriate fee division. Thus, Appellants have failed to establish that the trial court erred in applying the 70/30 formula to the Wamsley Fee.

For all of the foregoing reasons, we conclude that the trial court acted reasonably in light of all of the available evidence. Appellants criticize the trial court for lacking any evidentiary basis for its decision, but in our view it is Appellants who have failed to put forth any evidentiary or legal basis for the relief they seek. Nothing in the record supports a conclusion that Appellee's ability to retain all prior disbursements was dependent upon its success in the Action at Law. Were that the case, Appellants should have exhausted all legal avenues in an attempt to ensure that any disputed funds remained in escrow until the conclusion of the Action at Law. They did not. In this appeal,

Appellants have failed to articulate any legal or factual basis sufficient to overcome the rigorous standard of review applicable to the decision of an equity court.  We therefore affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/2019