J. A34045/14

2016 PA Super 2

ANGINO & ROVNER,          :          IN THE SUPERIOR COURT OF
                          :                   PENNSYLVANIA
              Appellant   :
                          :
          v.              :
                          :          No. 941 MDA 2014
JEFFREY R. LESSIN &       :
ASSOCIATES, ET AL         :


Appeal from the Order, May 27, 2014,
in the Court of Common Pleas of Dauphin County
Civil Division at No. 2012-CV-08019-CV


BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STABILE, JJ.


OPINION BY FORD ELLIOTT, P.J.E.:          **FILED JANUARY 05, 2016**

Appellant Angino & Rovner P.C. ("Angino") appeals from the order entered on May 27, 2014,[1] in the Court of Common Pleas of Dauphin County, denying Angino's and granting appellee Monsour Zarreii's ("Zarreii")[2] motions for partial judgment on the pleadings.[3]  This case

---

[1] The trial court docket indicates Angino filed, on May 30, 2014, a praecipe to enter judgment in favor of the appellee.  We consider the judgment entered to be superfluous to this appeal, since judgment need not be entered on an order granting judgment on the pleadings.  **See** Pa.R.C.P. 227.1.  Accordingly, we have corrected the caption in this case.

[2] Appellee Monsour Zarreii is also known as Michael Zarreii.

[3] On May 30, 2014, Angino filed in the trial court a praecipe to dismiss its outstanding claim against appellee Jeffrey R. Lessin & Associates, P.C. (Lessin).  As a result, Lessin is not a party to the instant appeal.

involves a fee dispute between Angino and Zarreii, its former client.  Upon review, we affirm.

The facts and procedural history underlying this appeal are undisputed.[4]  In June 2007, Zarreii engaged Angino -- specifically Richard C. Angino, Esq. -- to represent him in litigation stemming from a motor vehicle accident which occurred in April of 2006.  In this regard, on June 21, 2007, Zarreii executed a contingency fee agreement ("Agreement") with Angino containing a termination provision, which provided:

> If for any reason I (we) take my (our) case to another attorney or law firm including a former A & R[5] attorney or handle it myself (ourselves), I (we) recognize that A & R has, in good faith, expended money and time for my (our) benefit and I (we) therefore agree to pay, or have my (our) new attorney pay, immediately upon severing the A & R attorney/client relationship, all the out-of-pocket expenses incurred on my (our) case plus interest at the rate of 6% per annum from the date of each expenditure.  In addition, when the case is successfully concluded, I (we) agree to pay or direct my (our) new attorney **to pay as a fee 20% of the gross recovery to A & R**.

Contingency Fee Agreement, 5/21/07 at ¶5 (emphasis added).  On November 21, 2007, Angino obtained an offer of the policy limits of $100,000 from the tortfeasor's insurance carrier, Progressive Insurance, in exchange for a full release from liability relating to the motor vehicle

---

[4] Unless another source is cited, the facts are taken from the trial court's memorandum opinion, 5/27/14 at 1-2.

[5] A & R is an abbreviation for Angino Angino & Rovner, P.C.

accident. On December 20, 2007, Zarreii accepted Progressive's offer. Because the matter was settled with Progressive prior to the commencement of a civil action, Angino received a fee of 30% -- or $30,000 -- under the Agreement.

Angino thereafter pursued an underinsured motorist ("UIM") claim under Zarreii's motor vehicle insurance policy. As a result, Angino engaged the services of expert witnesses, and negotiated with Zarreii's insurance carrier, Erie. Because Zarreii's insurance policy required arbitration for UIM claims before a panel of three arbitrators[6] prior to filing a civil suit, Angino selected an arbitrator and scheduled the matter for arbitration.

Before the arbitration could be conducted, however, Zarreii, by letter dated March 30, 2010, terminated his relationship with Angino and retained Lessin to represent him in his UIM case against Erie.[7] By letter dated March 2, 2012, Zarreii's new counsel informed Angino that arbitration in Zarreii's UIM case was scheduled for March 27, 2012. Additionally, new counsel stated in the letter, "[s]ince you chose Mr[.] Zarreii's arbitrator and

---

[6] Of the three arbitrators assembled, one is selected by each party, and the third is selected by both parties to serve as the neutral arbitrator on the panel.

[7] Zarreii apparently terminated his relationship with Angino because of a disagreement over the valuation of his UIM case.

you have a 50% stake[8] in the outcome of the case, I would like you to attend [the] same." (Letter to Angino from Jeffrey R. Lessin, 3/2/12.)

On August 31, 2012, the arbitrators issued an award in favor of Zarreii and against Erie for $635,650. The arbitrators also awarded Zarreii's wife, Marilin Zarreii, $50,000 on her loss of consortium claim against Erie. The total award, therefore, was $685,650. Erie, however, was entitled to offset the $100,000 already received by Zarreii under the tortfeasor's insurance policy. As a result, the total amount at issue in this fee case was $585,650. By letter dated September 4, 2012, Zarreii's new counsel informed Angino that Angino was not entitled to receive a fee of 20% under the termination provision of the Agreement, despite the fact Zarreii terminated his representation with Angino, subsequently engaged Lessin, and settled his UIM case against Erie.

On September 11, 2012, Angino filed a complaint in the trial court, alleging that Zarreii breached the Agreement when he failed to pay Angino a contingency fee of 20% of the gross arbitration award ($585,650) in the UIM case. In other words, Angino alleged that Zarreii failed to pay him $117,130 under the termination provision of the Agreement. In addition, Angino alleged that Zarreii's subsequent counsel -- *i.e.*, Lessin -- also breached a

---

[8] According to Angino, 50% of the total fees received by Lessin in connection with Zarreii's UIM case amounts to a fee of 20% under the termination provision of the Agreement. (**See** Angino's brief at 11.) It would thus appear Lessin was to be paid a 40% contingency fee.

verbal contract with Angino whereby Lessin had agreed to share with Angino 50% of its fees received from Zarreii.

Subsequently, Zarreii and Lessin filed separate yet identical answers to the complaint, generally denying Angino's allegations and raising new matter. The parties thereafter each filed motions for partial judgment on the pleadings[9] under Pa.R.C.P. 1034 with respect to Zarreii's breach of the Agreement. On May 27, 2014, the trial court issued an order and memorandum opinion, granting Zarreii's and denying Angino's motion for partial judgment on the pleadings. The trial court agreed with Zarreii's argument that under Pennsylvania law, an attorney, or in this case Angino, may recover only on a theory of **quantum meruit**, regardless of a termination provision in a contingency fee agreement, when a client terminates an attorney, engages the services of other counsel, and subsequently settles the case. (**See** trial court opinion, 5/27/14 at 4.) In so doing, the trial court principally relied upon three Pennsylvania Superior Court decisions: **Hiscott & Robinson v. King**, 626 A.2d 1235 (Pa.Super. 1993), **appeal denied**, 644 A.2d 163 (Pa. 1994); **Fowkes v. Shoemaker**, 661 A.2d 877 (Pa.Super. 1995), **appeal denied**, 674 A.2d 1072 (Pa. 1996); and **Mager v. Bultena**, 797 A.2d 948 (Pa.Super. 2002), **appeal denied**, 814 A.2d 678 (Pa. 2002). The trial court observed Angino failed to assert a

---

[9] Angino filed what it termed "Plaintiff's Renewed Cross-Motion for Partial Judgment on the Pleadings."

***quantum meruit*** claim against Zarreii in this case. (***See*** trial court opinion, 5/27/14 at 4.) The trial court, therefore, denied relief to Angino.

On May 30, 2014, Angino filed a praecipe dismissing its breach of contract claim against Lessin,[10] thereby rendering final the trial court's May 28, 2014 order disposing of the parties' motions for partial judgment on the pleadings. Angino timely filed a notice of appeal. Although the trial court did not direct Angino to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, the trial court filed a Rule 1925(a) opinion, by which it merely adopted its memorandum opinion in support of its May 27, 2014 order.

On appeal, Angino raises a single issue for our review:

> Did the trial court err in granting Summary Judgment in favor of Mr. Zarreii and denying Summary Judgment to [Angino] where the facts are undisputed that Mr. Zarreii, an adult, knowingly and voluntarily entered into a contingent fee agreement with [Angino] that required the payment of a 20% fee if Mr. Zarreii [terminated] [Angino] and secured other counsel, particularly under the circumstances where [Angino] had prepared the underinsured motorist case completely to the point of selecting arbitrators and awaiting an arbitration hearing?

---

[10] Lessin agreed, pending resolution of this dispute, to escrow that portion of Zarreii's settlement proceeds from the arbitration award that would represent Angino's 20% termination fee.

- 6 -

Angino's brief at 4.[11]

In reviewing a trial court's grant of a motion for judgment on the pleadings, our scope of review is plenary. **See Vetter v. Fun Footwear Co.**, 668 A.2d 529, 531 (Pa.Super. 1995) (**en banc**), **appeal denied**, 676 A.2d 1199 (Pa. 1996). We apply the "same standard employed by the trial court." **Coleman v. Duane Morris, LLP**, 58 A.3d 833, 836 (Pa.Super. 2012) (citations omitted), **appeal granted in part**, 68 A.3d 328 (Pa. 2013), **appeal discontinued**, No. 29 EAP 2013 (Pa. September 18, 2013). "A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." **Citicorp N. Am. v. Thornton**, 707 A.2d 536, 538 (Pa.Super. 1998) (citation omitted).

To determine whether there are disputed issues of fact, we must confine the scope of our review to the "pleadings and documents properly attached thereto." **DeSantis v. Prothero**, 916 A.2d 671, 673 (Pa.Super. 2007) (citation omitted). Accordingly, "[we] must accept as true all well[-]pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion

---

[11] Angino mistakenly refers to the underlying cross-motions for partial judgment on the pleadings as motions for "summary judgment." Our review of the docket does not indicate the filing of any summary judgment motions by either party in this case. Accordingly, we shall disregard any references to summary judgment and address this case under the standards governing motions for judgment on the pleadings.

is filed, considering only those facts which were specifically admitted."

***Lewis v. Erie Ins. Exch.***, 753 A.2d 839, 842 (Pa.Super. 2000) (citations

omitted). No factual material outside of the pleadings may be considered in

determining whether there is an action under the law. ***See Bensalem Twp.***

***Sch. Dist. v. Commonwealth***, 544 A.2d 1318, 1321 (Pa. 1988). "We will

affirm the grant of such a motion only when the moving party's right to

succeed is certain and the case is so free from doubt that the trial would

clearly be a fruitless exercise." ***Coleman***, 58 A.3d at 836.

With our standard of review in mind, we summarize the issue and

arguments on appeal before us. Angino seeks to recover damages under

the termination provision of the Agreement. Angino argues Zarreii entered

into an enforceable contingency fee agreement with Angino, which Zarreii

breached when he terminated Angino, engaged the services of Lessin, and

subsequently failed to pay to Angino a fee of $107,130,[12] which represents

---

[12] In its brief to this court, Angino determines its contingency fee under the termination provision of the Agreement to be either $117,130 or $107,130. (***See*** Angino's brief at 25, 30.) We, however, observe Angino abandoned in its renewed cross-motion for partial judgment on the pleadings its demand for a $117,130 contingency fee, which included 20% of the $50,000 received by Mrs. Zarreii for loss of consortium. Specifically, Angino alleged in the motion that "[p]ursuant to [the Agreement], [Angino] is entitled to [20%] of the gross arbitration award (less payment of the underlying award and ***less the $50,000.00 award*** for Mrs. Zarreii who did not sign [the Agreement]). In other words, [Angino] is entitled to [20%] of $535,650.00, which equals ***$107,130.00***." (Angino's Renewed Cross-Motion for Partial Judgment on the Pleadings, 1/23/14 at ¶ 25 (emphasis added); ***see also*** trial court opinion, 5/27/14 at 3 n.2 ("In its [c]omplaint, [Angino] requests monetary relief in the amount of $117,130, representing twenty percent of the Zarreii's total arbitration award, less the payment made by Progressive.

20% of the gross arbitration award after it is reduced by the $100,000 settlement received by Zarreii from Progressive under the tortfeasor's policy. Angino argues any violations of the Agreement must be construed according to established contract principles. Specifically, Angino disagrees with Zarreii's position, accepted by the trial court, that, notwithstanding an arguably valid contingency fee agreement, terminated attorneys are entitled only to a **quantum meruit** recovery for their fees when their clients replace them with other counsel or proceed **pro se**, and ultimately obtain relief in their case.

At the outset, we observe attorneys are allowed to enter into contingency fee agreements because they provide attorneys with the potential for a higher fee, which compensates the attorneys for assuming the risk of nonpayment for services in the event a case is lost. **See** Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65 FORDHAM L. REV. 247, 271 (1996) ("The ethical justification for these approvals necessarily lies in the assumption that the lawyer's risk of receiving no fee, or a fee that effectively will be well below her normal hourly rate or opportunity cost, merits compensation in and of itself:

---

[The trial court] note[s], however, that [Angino], in its [c]ross-[m]otion, seeks only $107,130, disregarding the portion of the arbitration award entered in favor of [Mrs. Zarreii]."). Accordingly, we conclude Angino seeks to recover from Zarreii only $107,130 as its contingency fee under the Agreement.

Bearing the risk entitles the lawyer to a commensurate risk premium."). Clients, however, are largely shielded from incurring a financial loss resulting from an unfavorable outcome.

Nonetheless, "under Pennsylvania law, a client has the absolute right to terminate an attorney-client relationship, regardless of any contractual arrangement between the two parties." *Kenis v. Perini Corp.*, 682 A.2d 845, 849 (Pa.Super. 1996); *see* Pa.R.P.C. 1.16 cmt. [4] ("A client has a right to [terminate] a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services."). Upon a client's termination of an attorney-client relationship <u>prior</u> to the occurrence of the contingency set forth in a fee agreement, the client is not relieved of his or her obligation to compensate the attorney for services rendered until the time of termination. In such situations, the terminated attorney generally has a claim in *quantum meruit* to recover his fees. *See Hiscott*, 626 A.2d at 1237 (noting the contingency contemplated in the agreement was not satisfied). "Quantum meruit is an equitable remedy[, which] is defined as 'as much as deserved' and measures compensation under an implied contract to pay compensation as reasonable value of services rendered." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, PC*, 95 A.3d 893, 896 (Pa.Super. 2014) (citation omitted), *appeal granted*, 113 A.3d 277 (Pa. 2015). The issue presently before us is whether an attorney only has resort to *quantum meruit* for a

fee recovery even where a contingency fee agreement, like the one at issue here, contains a termination provision governing the termination of the attorney-client relationship <u>prior</u> to the occurrence of the contingency.

A client's right to discharge his attorney for any or no reason and without penalty is an implied term of every attorney-client engagement contract and is based on the unique concepts of trust and confidence that flow from this fiduciary relationship. "Therefore, when a client exercises this implied contractual term it is not a breach of contract, and hence there is no liability for contract damages." Lester Brickman, *Setting The Fee When The Client Discharges A Contingent Fee Attorney*, 41 Emory L.J. 367, 370 (1992).

Without question, contingency fee agreements serve a salient purpose. Besides compensating attorneys for assuming the risk of nonpayment in the event the case is lost, such arrangements allow for the vindication of legal rights and enable injured persons access to both counsel and the courts.

> In exchange for assuming the risk of no or low recovery, as well as the risk of having to devote considerably more time to the venture than anticipated, the attorney charges a risk premium: . . . That premium is both payment for the lawyer's lending of services to the client and assumption of the recovery and time expenditure risks. A contingent fee is, therefore, a financing device which provides access to the courthouse for both the impecunious client and the risk-averse client . . .

***Id.*** at 379-380 (footnotes omitted).

With a contingency agreement, an attorney will evaluate the risks related to a recovery in a case and what percentage of an award will best compensate the attorney and the firm for their labors. The attorney accepts the risk that if there is no recovery, then the attorney receives no compensation.

Examining the contract provision in question, upon Zarreii's termination of the relationship, the firm is entitled to *quantum meruit* damages. In addition, if recovery is had by the client through the efforts of another attorney, then Angino is also entitled to a 20% fee on that award, presumably half of the firm's standard contingency fee of 40%. As this contingency does not actually reflect the efforts and contributions made toward the client's ultimate recovery, this latter provision must be characterized as nothing more than a penalty on the client for severing the relationship with Angino. Clearly, a discharged contingency fee lawyer is entitled to just compensation and this is had through *quantum meruit*. *See Meyer, Darragh*, 95 A.3d at 896 ("It is well-settled that 'a client may terminate his relation with an attorney at any time, notwithstanding a contract for fees, but if he does so, thus making the performance of the contract impossible, the attorney is not deprived of his right to recover on a quantum meruit a proper amount for the services he has rendered.'"), quoting *Mager*, 797 A.2d at 958-959 (Joyce, concurring) (citations omitted). To add a contingency fee charge on any subsequent recovery to the

*quantum meruit* amount is additional compensation without any additional legal services performed. Additionally, it may well inhibit the client from engaging another lawyer to pursue his claim.

Angino makes much of the trial court's failure to apply basic contract principles to this engagement contract. Angino asserts that this contract was an arm's length agreement between two adults. Angino argues that the latter provision is there to specifically protect the firm against the long-standing line of cases in Pennsylvania holding that the only remedy available to a discharged attorney, on a contingency or any other contract with a client, is through *quantum meruit*. This is precisely why the contract provision is unenforceable.

In a fiduciary relationship, such as attorney and client, attorneys are not free to impose any terms they wish on their clients. Rather, the Rules of Professional Responsibility and the very nature of the relationship based on confidence and trust set the limits of engagement contracts. Just as a lawyer may not charge an exorbitant fee or place a "no termination" clause in the contract or assert a vested interest in a client's claim, a lawyer may not penalize a client for discharging him or her. It is of no moment that Zarreii did not challenge the contract as unconscionable or violative of the rules for attorney conduct. The assertion of *quantum meruit* as the only recovery available to Angino, as a matter of law, is all that is necessary to establish the lack of enforceability of the contract. This unenforceablity is

based on unconscionability and a violation of the fiduciary relationship between attorney and client.

Angino distinguishes *Mager* because the contingency contract involved did not contain a termination provision. (Angino's brief at 23.) This is not surprising considering the long-standing precedent in this Commonwealth referenced above. However, we cannot so easily dismiss the rationale of the decision:

> No Pennsylvania appellate court has ever awarded a proportionate share of a contingency fee to a firm discharged by the client well prior to the occurrence of the contingency, for the simple reason that a client may discharge an attorney at any time, for any reason. Once the contractual relationship has been severed, any recovery must necessarily be based on the work performed pursuant to the contract up to that point. Where the contingency has not occurred, the fee has not been earned.
>
> An attorney, contrary to the argument urged upon us by ML & W, does not acquire a vested interest in a client's action. To rule otherwise would make fiction of the oft-repeated rule that a client always has a right to discharge his attorney, for any reason or for no reason, *Richette v. Pennsylvania Railroad*, 410 Pa. 6, 19, 187 A.2d 910, 917 (1963); *Dorsett v. Hughes*, 353 Pa.Super. 129, 509 A.2d 369, 373 (1986). Surely, to accept the argument of appellant would be to impose a penalty on the exercise of that right.[Footnote 14]
>
>> [Footnote 14] In fact, Mr. Fox, counsel for ML & W argued to the trial court that "the client had a right to leave, but the client has to leave with the consequences of leaving."

*Mager*, 797 A.2d at 958 (footnote 13 omitted).[13]

However, an important aspect of Judge Joyce's dissent in *Mager* is the idea that a *quantum meruit* recovery need not be limited to an hours and expenses analysis. As discussed by Judge Joyce, *quantum meruit* is

---

[13] We cannot agree with our esteemed colleague's reliance on *Capek v. Devito*, 767 A.2d 1047 (Pa. 2001), to support the position that such contract provisions as involved herein are valid and enforceable. Our Supreme Court's decision in *Capek* clearly sets out the issue to be decided by the court in the first paragraph of the Opinion.

> The issue presented is whether the lower courts erred in awarding summary judgment to Appellee Jennifer Devito, thereby precluding Appellant, an attorney, from claiming a fee under a contingency fee agreement ("Agreement") that included the language "no recovery no fee", where the Agreement also provided for recovery of a fee under the doctrine of quantum meruit.

*Id.* at 1048.

Clearly, the court was looking to the liquidated damages clause in the contingency contract as allowing Mr. Capek to recover for his time and effort in his representation of his client. The contract provided for something more than an hourly rate calculation. Rather, Mr. Capek would receive a percentage of the settlement offer he supposedly negotiated or a fee based upon his prevailing rate. Our Supreme Court, while deciding that the liquidated damages provision was not interpreted correctly by the Superior Court, did not enter an award on appeal for Mr. Capek. Rather, as noted by the dissent, the court remanded to determine if the Agreement was unconscionable, illegal, and/or violated the Rules of Professional Conduct and to determine the validity of the alleged settlement agreement. This case hardly represents a ringing endorsement of the liquidated damages provision in the contingency agreement. The court in *Capek* merely determined that the trial court and the Superior Court had erred in interpreting the "no recovery no fee" provision in the contract as precluding Mr. Capek from receiving any compensation for his services if discharged by his client.

an equitable action and principles of fairness should prevail. **Mager**, 797 A.2d at 962. Depending on the nature of the case, merely multiplying the hourly rate by the number of hours worked may be too narrow of an approach. **Id.** at 961-962. In Judge Joyce's opinion, deciding the reasonable value of an attorney's services requires the court to take into consideration the particular circumstances of the case before it, including the complexity of the litigation and the results achieved:

> [I]n the absence of a special agreement, an attorney is entitled to be paid the reasonable value of his services. In addition to the labor and time involved, other factors must be taken into consideration, such as the character of services rendered, the importance of the litigation, the skill necessary, the standing of the attorney, the benefit derived from the services rendered and the ability of the client to pay, as well as the amount of money involved. The question of reasonableness is within the sound discretion of the trial court.

**Id.** at 960-961 (Joyce, J., concurring), quoting **Robbins v. Weinstein**, 17 A.2d 629, 633 (Pa.Super. 1941).

The facts of this case represent a compelling reason to award Angino more than an hours and expenses **quantum meruit** recovery. As set out above, Angino successfully pursued an insurance liability case against the tortfeasor's insurer for which he received a percentage fee. However, a great deal of the work devoted to this claim was relevant and important to the UIM action. Angino participated in the selection of two of the arbitrators who would eventually render a substantial award to Zarreii, and the Lessin

firm implicitly recognized Angino's contributions to the case when they asked Angino to attend the arbitration. The facts of this case would clearly support the notion that **quantum meruit** recovery should be based on a fair assessment of the contributions of the discharged attorney to any eventual award in the case. We make no determination as to whether such a recovery is still available to Angino in this case.

Since the termination penalty imposed by the contingency contract in this case is unenforceable, we affirm the trial court's order granting Zarreii's and denying Angino's motion for partial judgment on the pleadings.

Order affirmed.


Shogan, J. joins the Opinion.

Stabile, J. files a Dissenting Opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2016