J-A24015-16

2017 PA Super 125

| | |
|---|---|
| FRONT STREET DEVELOPMENT ASSOCIATES, L.P. AND JOSEPH PACITTI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| CONESTOGA BANK, DAVID BUTTE, RICHARD ELKO, 130 FRONT STREET L.P. 123 EAST LLC, PHILLIP MCFILLIN, NATIONAL REALTY INVESTMENT ADVISORS LLC, THE LOCAL DEVELOPMENT COMPANY, LLC AND GRACE LUTERO | |
| Appellees | No. 553 EDA 2016 |

Appeal from the Order Entered January 26, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): August Term, 2014 Case No. 03867

BEFORE:  BOWES, OTT AND SOLANO, JJ.

OPINION BY BOWES, J.:                                   **FILED APRIL 26, 2017**

Front Street Development Associates, L.P. ("Front Street" or "Borrower") and Joseph Pacitti ("Pacitti" or "Guarantor") (collectively "Plaintiffs" or "Borrowers") appeal and challenge the trial court's grant of judgment on the pleadings in favor of Conestoga Bank, David Butte, Richard Elko ("Bank Defendants" or "Lender") and the Local Development Company, LLC ("LDC").  Additionally, they challenge the order striking their demand for

a jury trial.[1] After thorough review, we affirm the grant of judgment on the pleadings to the Bank Defendants and LDC, thus rendering moot the propriety of the order striking the jury trial demand.

This action arises from a loan transaction between sophisticated commercial parties. Front Street owned several parcels of property located at Front and Sansom Streets in Philadelphia. The property identified as 130 S. Front Street ("the Property") is at the center of this controversy. Defendant Conestoga Bank held a note and a mortgage on the Property securing a $5.5 million loan made on April 26, 2006, to Front Street. The loan was to mature on June 1, 2007.

Despite several *allonges* to the note that extended the maturity date, Front Street was in default on the loan in 2010. On April 13, 2010, Plaintiffs and Bank Defendants entered into a Loan Modification and Forbearance Agreement ("the Forbearance Agreement"), by which Plaintiffs acknowledged default, but the Bank agreed to forbear and extend the maturity date on the

---

[1] Plaintiffs settled their claims against the buyer, 130 Front Street L.P., its general partner, Grace Lutero, and National Realty, and these parties were dismissed on March 31, 2015. On January 26, 2016, Appellants voluntarily discontinued the only remaining claims against 123 East LLC ("123 East") and Phillip McFillin, which effectively rendered the case final. Thus, the instant appeal filed February 3, 2016 is timely. Appellants challenge the propriety of the trial court's May 22, 2015 order striking their demand for a jury trial as to all parties; the August 24, 2015 order granting judgment on the pleadings in favor of the Bank defendants; and the October 29, 2015 order granting judgment on the pleadings in favor of Local Development Company, LLC.

loan until March 30, 2012. That Forbearance Agreement was amended in writing on March 30, 2012, and again on July 8, 2013, ultimately extending forbearance and the maturity date to March 5, 2014. The Forbearance Agreement contained a release ("the Release") that is the focus of judgment on the pleadings.

On June 4, 2014, three months after the apparent lapse of the second amendment to the Forbearance Agreement, Mr. Pacitti brought the Mazolla brothers, who were local investors, to a meeting with the Bank Defendants. According to Plaintiffs, the Bank Defendants represented that the purpose of the meeting was to discuss how the Mazolla brothers could buy and develop the Property. A purchase price of $5.8 million was mentioned. Discussion purportedly focused on the Bank taking title to the property through a "friendly foreclosure," and the investors and Mr. Pacitti would develop sixteen residential homes on the property.

At that meeting, defendant David Butte, Executive Vice-President of Conestoga Bank, presented a Deed in Lieu of Foreclosure ("Deed") dated June 4, 2014, to Mr. Pacitti. According to Mr. Pacitti, the Bank Defendants secured his signature on the Deed by representing it was the same document he had signed earlier and that the Bank just wanted to update its documents. The Bank Defendants allegedly reassured Mr. Pacitti that the Bank was not going to take any adverse action against Plaintiffs, and Plaintiffs believed that the Deed was intended to facilitate the deal with the

Mazolla brothers. Based upon those assurances, Mr. Pacitti signed the Deed, although he averred that he did not realize the name of the grantee in the Deed was blank.

According to Plaintiffs, the meeting was a ruse to trick Mr. Pacitti into signing the Deed to facilitate the Bank's conveyance of the Property to another buyer. Unbeknownst to Plaintiffs, the Bank Defendants had already agreed to sell the loan documents ("Loan Documents") to LDC, an agent for 123 East, an entity affiliated with Phillip McFillin. Plaintiffs were already embroiled in a lawsuit with Mr. McFillin and his associated entities involving the Property.[2] Plaintiffs' second amended complaint added Phillip McFillin

_____

[2] When Plaintiffs asserted these claims against McFillin and 123 East, there was already an action pending by 123 East and McFillin against Plaintiffs in the Court of Common Pleas of Philadelphia County at No. 816 December Term 2013 ("Related Case"). In that action, 123 East alleged that Plaintiffs breached an Agreement for the Sale of Land dated March 30, 2010, regarding the Property. The agreement provided that McFillin and his related entity, Avantissimo, LLC or their assignee, would assist Pacitti with the marketing and sale of the Property. For their efforts, they would receive fifty percent of any amount exceeding the $5.6 million owing to the Bank. Each party owed the other the right of first refusal. Avantissimo allegedly procured a buyer willing to pay $6.5 million for the Property, assigned its rights under the agreement for sale to 123 East, and that entity sued Plaintiffs for breach of agreement when Plaintiffs herein refused to sell the Property to the buyer it procured.

On December 3, 2014, 123 East, McFillin, and Plaintiffs entered into a stipulation to dismiss the Related Case and to litigate all claims among the parties in this action. On January 26, 2016, after the entry of judgment on the pleadings as to the Bank defendants and LDC, Plaintiffs discontinued this action as to 123 East and McFillin.

and 123 East as defendants. They pled claims for declaratory judgment, fraud, slander of title, negligent misrepresentation, and civil conspiracy against those defendants. The substance of the claim was that McFillin, acting on behalf of Avantissimo and 123 East, tricked Plaintiffs into executing an Agreement for Sale of the Property and subsequently conspired with the Bank Defendants to divest Plaintiffs of the Property. Plaintiffs alleged that LDC was prepared to cancel the loan purchase agreement, but decided to move forward after conferring with Mr. McFillin on May 22, 2014. McFillin purportedly took steps to remove the *lis pendens* on the property that the lawsuit filed by 123 East created so that LDC could purchase the loan and the property. According to Plaintiffs, the Bank Defendants pretended to work with them on the deal with the Mazollas while proceeding to sell the loan to LDC for the benefit of LDC, McFillin, and 123 East. On August 14, 2014, the Bank assigned and transferred the mortgage on the Property to defendant 130 Front Street L.P. ("130 Front Street"), and the Deed naming that entity as grantee was recorded on August 19, 2014.

Plaintiffs commenced this action against the Bank Defendants on August 28, 2014, by praecipe for writ of summons, and subsequently filed a complaint requesting a jury trial. In their fourth amended complaint, Plaintiffs alleged that the maturity date of the loan was extended by course of dealing to March 2015, and the Bank breached the Forbearance Agreement when it treated the loan as being in default and filed the Deed in

lieu. Plaintiffs also averred that the Bank breached its contractual duty of good faith and fair dealing when it procured the signed Deed by misrepresenting its purpose and consequences and conspired with the other defendants to divest Plaintiffs of the Property. The complaint contained counts of fraud in fact, fraud in the inducement, tortious interference with prospective contract, invasion of privacy/commercial disparagement, breach of fiduciary duty, misrepresentation, and civil conspiracy. Plaintiffs alleged they were deprived of prospective economic opportunities with the Mazolla brothers when the Bank wrongfully divested them of the Property. Plaintiffs sought both compensatory and punitive damages from the Bank Defendants.

In a subsequent amended complaint, Plaintiffs added LDC as a defendant. Plaintiffs alleged that the Bank's April 24, 2014 agreement to assign the loan to LDC, which was affiliated with 123 East and McFillin, was in furtherance of the conspiracy among those parties to wrongfully take the Property from Plaintiffs.

On April 13, 2015, the Bank Defendants moved to strike the jury trial demand, asserting the jury trial waiver contained in the Loan Documents. The court struck the jury trial demand on May 22, 2015, and subsequently extended that ruling to the other parties in the action. Plaintiffs challenge that ruling on appeal.

Thereafter, the Bank Defendants moved for judgment on the pleadings alleging that Plaintiffs released the claims that they were asserting against

the Bank Defendants when they voluntarily and knowingly signed the Forbearance Agreement containing a release on March 13, 2010. The trial court agreed, and entered judgment on the pleadings in favor of the Bank Defendants on all of the aforementioned tort and contract claims. The court reasoned that the release provision in the Forbearance Agreement "explicitly contemplated the precise claims asserted in the complaint, and released the [bank] defendants from liability 'whether statutory, in contract or in tort.'" Order, 8/24/15, at 1. The court ruled in a subsequent order that since the Release was valid, it was also enforceable by the assignee, LDC. Order, 10/29/15, at 1.

Plaintiffs appealed to this Court.[3] They present five questions for our review:

1. Did the trial court err in granting Defendant-Appellee the Local Development Company LLC's ("LDC") and Defendants-Appellees Conestoga Bank's, David Butte's, and Richard Elko's (collectively, the "Bank Defendants") motions for judgment on the pleadings where there are disputed issues of fact as stated in the pleadings such that neither LDC nor the Bank Defendants were entitled to judgment as a matter of law, including where Plaintiffs made no admissions of fact, but instead, specifically denied the applicability of the release as to the claims alleged in the fourth amended complaint?

2. Did the trial court err by applying the release (executed in 2010) to unaccrued, future claims (including tort claims and a claim for breach of the very contract containing the release) against the Bank Defendants and LDC that did not arise until

_____

[3] Plaintiffs filed three notices of appeal to this Court. We quashed two of the appeals as duplicative on April 18, 2016.

2014, where the release contains no such language, and where the law of this Commonwealth is clear that releases are to be strictly construed?

3. Did the trial court err by striking Plaintiffs' jury demand based on jury waiver provisions in the loan documents where Plaintiffs' causes of action against the Bank Defendants (except for breach of contract) arise from the Bank Defendants' tortious conduct, independent of the loan documents, and were not contemplated by the jury waiver?

4. Did the trial court err by striking Plaintiffs' jury demand based on jury waiver provisions in the loan documents where Plaintiffs' causes of action against the Bank Defendants (except for breach of contract) arise from the Bank Defendants' tortious conduct, independent of the loan documents, and were not contemplated by the jury waiver?

5. Did the trial court err by striking (a) the jury demand by Pacitti (who did not execute a waiver), and (b) Plaintiffs' jury demand as to those co-defendants who are not parties to any document containing a jury trial waiver, rather than bifurcating the trial to include both the jury portion and non-jury portion?

Appellants' brief at 5-6.

Plaintiffs' first two issues implicate the propriety of the trial court's grant of judgment on the pleadings. When we review the grant of judgment on the pleadings, we apply the same standard applied by the trial court. *Angino & Rovner v. Jeffrey R. Lessin & Associates*, 131 A.3d 502, 507 (Pa.Super. 2016). The grant is proper only "when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Id*. In making that determination, we confine our review to the "pleadings and documents properly attached thereto." *Id*. Accordingly, "We must accept as true all well-pleaded statements of fact, admissions, and any

- 8 -

documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted." *Id*. (quoting *Lewis v. Erie Ins. Exch.*, 753 A.2d 839, 842 (Pa.Super. 2000)).

Plaintiffs allege that, after the execution of the Agreement containing the release language at issue (the "Release"), LDC and the Bank Defendants conspired to fraudulently divest Plaintiffs of the Property. Appellants' brief at 25. Since these claims survived preliminary objections, Plaintiffs maintain that they are well pled and that the factual averments therein must be accepted as true. *Id*. at 26. Plaintiffs contend further that the factual allegations therein, which include averments that the Bank Defendants failed to comply with the terms of the Loan Documents, together with Plaintiffs' denials of the applicability of the doctrines of release or waiver, preclude entry of judgment on the pleadings based on the Release.

Plaintiffs' argument evinces a misunderstanding of judgment on the pleadings.[4] The trial court granted judgment on the pleadings based on the

_____

[4] Plaintiffs devote considerable argument to their contention that there were facts pled that, when deemed to be true, established a genuine dispute as to the applicability of the Release. For instance, Plaintiffs contend that they were not in default when the Deed in lieu was executed in 2014. They maintain that the Forbearance Agreement had been extended by the Bank Defendants' oral representations or course of dealing, and that the Bank's filing of the Deed was a breach of its agreement to forbear.

*(Footnote Continued Next Page)*

Release.  The issue before us is whether Plaintiffs alleged **facts** that, when deemed to be true, would take their causes of action outside the scope of the Release.  Plaintiffs' denials that the Release precluded claims of fraud and breach of contract are not facts that we must view as true for purposes of our review.  Nor do those denials preclude the Bank Defendants and LDC from relying upon the Release for purposes of judgment on the pleadings as Plaintiffs contend.  While we assume that the non-moving party's well-pled facts are true when we review the grant of judgment on the pleadings, the same deference is not accorded legal conclusions, for instance, the inapplicability of legal doctrines such as release or waiver.  If, assuming the facts as pled by Plaintiffs to be true, the Release nevertheless forecloses Plaintiffs' claims of breach of contract, tortious interference with prospective contract, commercial disparagement, misrepresentation, conspiracy, and fraud, then judgment on the pleadings was proper as a matter of law.  Thus, this claim misses the mark and affords no potential for relief.

We now address whether the Release contained in the Agreement operated to bar the Plaintiffs' claims herein.  The Release is located in

_(Footnote Continued)_ ─────────────────

The Plaintiffs' position is undermined by the provision in the Forbearance Agreement providing that it is a fully integrated document and that any modifications must be in writing, as well as two prior amendments in writing that extended the maturity date of the loan.  Even assuming the truth of Plaintiffs' allegation that the Bank Defendants made oral representations extending the maturity date of the loan, the efficacy of the Release is not implicated.

- 10 -

section 11.1 of the Forbearance Agreement. It is recited therein that, "[i]n order to induce Lender to enter into this Agreement, Borrower and Guarantor do agree as follows:"

> (a) Borrower and Guarantor do hereby fully, finally and forever acquit, quit claim, release and discharge lender and its past and present officers, directors, employees, agents, attorneys, successors and assigns of and from any and all obligations, claims, liabilities, damages, demands, debts, liens, deficiencies or cause of action to, of or for the benefit (whether directly or indirectly) of Borrower and Guarantor at law or in equity, known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereinafter discovered, whether statutory, in contract or in tort, as well as any other kind or charter of action now held, owned or possessed (whether directly or indirectly) by Borrower or Guarantor on account of, arising out of, related to or concerning, whether directly or indirectly, approximately or remotely (i) the negotiation, review or preparation or documentation of the Loan Documents or any other documents or agreements executed in connection therewith, (ii) the enforcement, protection or preservation of lender's rights under the Loan Documents, or any other documents or agreements executed in connection therewith, and/or (iii) any action or inaction by Lender in connection with such documents, instruments and agreements (the "Released Claims").

Loan Modification and Forbearance Agreement, 4/13/10, at § 11.1.

In addition, the Borrower and Guarantor promised not to prosecute any claim or counterclaim related to the Released Claims. Loan Modification and Forbearance Agreement, Section 11.2. ("Borrower and Guarantor do hereby agree that they will never prosecute nor voluntarily aid in the prosecution of any action or proceeding related to the Released Claims, whether by claim, counterclaim or otherwise.").

The Bank Defendants sought judgment on the pleadings based on Plaintiffs' express release of all claims "arising out of, relating to or concerning" the Loan Documents, the enforcement and preservation of the Lender's rights, as well as any action or inaction by the Lender regarding the documents and instruments. Loan Modification and Forbearance Agreement, 4/13/10, at Section 11.1. They contend that Plaintiffs' claims, whether in contract or tort, arise out of and are related to the Loan Documents, and are thus barred by the Release.

Plaintiffs counter that, under Pennsylvania law, "a release covers only those matters which may be fairly said to have been within the contemplation of the parties when the release was given." *Restifo v. McDonald*, 30 A.2d 199, 201 (Pa. 1967). Otherwise, they argue, a release would unfairly operate to bar claims that the parties would never have foreseen. Appellants' brief at 30. The claims herein, according to Plaintiffs, accrued four years after the execution of the Agreement containing the Release. Plaintiffs maintain that releases must be strictly construed so as not to bar claims that had not accrued when the release was executed. *Fortney v Callenberger*, 801 A.2d 594 (Pa.Super. 2002); *Vaughn v. Didizian*, 648 A.2d 38, 40 (Pa.Super. 1994). It is only where a release contains language that can be fairly construed to release unaccrued, future claims, that it will be enforced to bar such claims. They argue that the Release at issue does not contain such language.

In support of their position, Plaintiffs rely upon **Bowersox Truck Sales & Serv., Inc. v. Harco Nat. Ins. Co.**, 209 F.3d 273 (3d Cir. 2000) (applying Pennsylvania law). They charge the trial court herein with improperly inserting the word "future" into the Release where it was not intended by the parties. Plaintiffs contend that their conspiracy claims against LDC and the Bank Defendants did not accrue until 2014, four years after the execution of the Release and unaccrued future claims were not contemplated in the Release.

In response, the Bank Defendants allege that Plaintiffs have merely recast contract claims as tort-based causes of action that they claim arise from conduct outside the lending relationship. They assert that this tactic is of no avail as the Release bars all claims, "whether statutory, in contract or in tort." The Bank Defendants maintain further that all of Plaintiffs' claims are related to the Loan Documents, as modified and amended from time to time, and the parties' ongoing contractual relationship. Finally, the Bank Defendants contend that there was no temporal limitation to the Release. Although the claims at issue herein arose after the execution of the Release, they were contemplated by the parties when the Release was executed. In support of that contention, the Bank Defendants point to the fact that the execution and recording of a deed in lieu was expressly authorized in the Agreement. They characterize the execution of the 2014 Deed in lieu as merely a subsequent modification of an existing loan document, namely the

2010 deed in lieu. Not only did the Release apply to claims "now held," according to the Bank Defendants, but to claims "unknown," or "hereinafter discovered," even remotely connected with the enforcement or preservation of the Bank's rights under the Loan Documents or any other documents executed in connection therewith. Such language was intended to include not only existing claims, but claims that would subsequently arise related in any way to the Loan Documents and the Bank's enforcement of its rights.

Nor, according to the Bank Defendants, are all releases that purport to release future unaccrued claims unenforceable. They direct our attention to **Three Rivers Motors Co. v. Ford Motor Co.**, 522 F.2d 885 (3d Cir. 1975), where, applying Pennsylvania law, the Court of Appeals for the Third Circuit recognized that future claims may be released if they were contemplated by the parties at the time of the release. They also point to our High Court's decision in **Buttermore v. Aliquippa Hosp.**, 561 A.2d 733, 735 (Pa. 1989), where a general release of "past, present and future claims" was upheld and enforced.

It is undisputed that the parties entered the Loan Modification and Forbearance Agreement that contained the Release. There are no allegations that the Release itself was procured by fraud, duress, or mutual mistake, and thus, it is binding between the parties. **Strickland v. University of Scranton**, 700 A.2d 979, 986 (Pa.Super. 1997). Furthermore, it is well-settled law that "commercial parties are free to

contract as they desire." ***Mellon Bank, N.A. v. Aetna Business Credit, Inc.***, 619 F.2d 1001, 1009 (3d Cir. 1980) (citing ***Brokers Title Co., Inc. v. St. Paul Fire & Marine Ins. Co.***, 610 F.2d 1174 (3d Cir. 1979)).

In construing a general release, "it is crucial that a court interpret [the] release so as to discharge only those rights intended to be relinquished.  The intent of the parties must be sought from a reading of the entire instrument, as well as from the surrounding conditions and circumstances."  ***Vaughn***, 648 A.2d at 40.

The construction of the Release presents an issue of contract.

[T]he interpretation of any contract is a question of law and this Court's scope of review is plenary.  Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

***Nevyas v. Morgan***, 921 A.2d 8, 15 (Pa.Super. 2007) (quoting ***Currid v. Meeting House Restaurant, Inc.***, 869 A.2d 516, 519 (Pa.Super. 2005)).

Where, as here, there is no allegation that the Release was ambiguous, "[t]he courts of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language and interpreted the release as covering only such matters as can fairly be said to have been within the contemplation of the parties when the release was

given."  *Omicron Sys. v. Weiner*, 860 A.2d 554, 559 (Pa.Super. 2004) (quoting *Fortney v. Callenberger*, 801 A.2d 594, 597 (Pa.Super. 2002)). The issue herein is whether the Release in the Forbearance Agreement was intended to bar claims of the nature asserted by Plaintiffs herein.

The Forbearance Agreement provides generally as follows.  The Loan Agreement, the Note, the *allonges*, the Forbearance Agreement and all other loan documents, "with all prior and **future modifications**" collectively constitute the Loan Documents.  Loan Modification and Forbearance Agreement, 4/13/10, at 1 subsection (A) (emphasis added).  It is recited therein that "(C) Borrower and Guarantor are in default of their respective obligations under the Loan Documents as a result of, *inter alia*, Borrower's failure to pay the installments of interest due under the Note, late charges and certain fees."  *Id*. at 1.  Lender agreed to "forebear from enforcing any of its rights to collect the indebtedness until the Maturity Date, as same may be extended pursuant to the terms of this Agreement."  *Id*. at 3 § 6.1.

One of the conditions of forbearance was that Borrower and Guarantor execute a deed in lieu of foreclosure and related documents that would be held in escrow until either the debt was satisfied or a monetary event of default occurred.  If the debt was not satisfied prior to default, the deed in lieu would be released to the Bank and it could record the deed at its sole discretion.  *Id*. at § 6.2(b).  Upon expiration of the forbearance, the Lender could terminate its agreement to forbear without notice or demand, and, at

Lender's option, the entire outstanding principal balance of the Loan would become due and payable in full. *Id*. at §§ 9.2-10.2. The Forbearance Agreement provided that the obligations of Borrower and Guarantor expressly "shall remain in full force and effect" but, in consideration for the Bank's agreement to forbear execution on the loan and the property, Plaintiffs released all claims arising out of the Loan Documents.

In addition to releasing claims related in any way to the Loan Documents, Guarantor Pacitti affirmed and ratified his guaranty and his confession of judgment, acknowledged the obligation, and confirmed that he had no defense, counterclaim or set-off of any kind. The Forbearance Agreement further provided that the law of Pennsylvania governed its interpretation, and that it was fully integrated and could not be orally modified. *Id*. at §§ 14.3 and 14.4. Notably, Borrower and Guarantor also agreed to execute and deliver to Lender such other documents as Lender believed necessary or convenient to carry out the terms of the Forbearance Agreement. *Id*. at § 14.5.

Thereafter, the parties executed a First Amendment to the Loan Modification and Forbearance Agreement dated March 30, 2012, extending the maturity date to March 5, 2013, and a Second Amendment extending the maturity date to March 5, 2014. All of these documents, by definition, are Loan Documents as defined in the Forbearance Agreement.

After reviewing the Release and the entire Forbearance Agreement, we are unpersuaded by Plaintiffs' contention that they "explicitly only released claims they 'held, owned or possessed' in 2010 at the time of execution of the Release." Appellants' brief at 33. The Release contains language clearly indicating an intent to bar claims even remotely arising out of or connected to the Loan Documents as subsequently modified. The definition of Loan Documents included future modifications to existing documents and instruments such as the deed in lieu. Claims involving the Forbearance Agreement itself and the simultaneously executed deed in lieu could only arise after execution of the Release, yet they were released specifically.

Furthermore, the Plaintiffs expressly released contract or tort claims "known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereinafter discovered" arising out of or related to the Loan Documents. *See* Loan Modification and Forbearance Agreement, 4/13/10, at § 11.1 (Release), *supra* at 11. The scope of the Release was not limited to contract claims that had accrued by the time of the Agreement. The parties intended it to apply to claims of any kind in any way related to the Loan Documents as subsequently modified.

The misrepresentation, fraud, tortious interference and civil conspiracy claims all pertain to the Bank Defendants' actions in inducing Plaintiffs to sign the 2014 Deed. The Forbearance Agreement specifically required that Borrower and Guarantor execute a deed in lieu. It also anticipated and

provided for the execution of additional documents in the future to protect Lender's rights under the Loan Documents, which would include the 2014 Deed. Even the commercial disparagement/invasion of privacy claim arose from the Bank Defendants' alleged obligations to Plaintiffs under the Loan Documents.

We conclude that the Release, when read in the context of the Agreement as a whole, was intended to release claims that would accrue in the future and which arose from or were remotely related to the Loan Documents. Thus, it was contemplated that claims could arise from Loan Documents that were not yet in existence as of the date of the Agreement and Release. Crediting Plaintiffs' well-pled facts, as we must, and considering the documents appended to the pleadings, we find that the Release operates to preclude Plaintiffs from maintaining the causes of action pled in their Fourth Amended Complaint against the Bank Defendants as a matter of law.

The question remains whether LDC, as the assignee of the loan, is entitled to the benefit of the Release. The trial court concluded that LDC, as the Bank's assignee, was entitled to assert the Release. Plaintiffs argue that LDC cannot avail itself of the Release because it was not a party to the Forbearance Agreement. Furthermore, they allege that the claims arose after the execution of the Forbearance Agreement and the Release applied

only to claims existing at the time the Release was executed. We rejected the latter argument *vis 'a vis* the Bank Defendants.

LDC counters that the Release, by its terms, purported to release and discharge the Bank Defendants and "assigns." Loan Modification and Forbearance Agreement, 4/13/10, at § 11.1. Thus, LDC contends, assignment of the loan was "obviously contemplated and permitted." LDC's brief at 17. LDC was the owner of the loan when the Deed was executed on June 4, 2014.

We agree with the trial court that LDC, as the assignee of the loan, is entitled to the protection of the Release in the Forbearance Agreement. Assignment of the loan was both sanctioned and contemplated, and the validity and effectiveness of the assignment is not challenged herein. LDC, as the assignee, stands in the shoes of the assignor. *Crawford Cent. Sch. Dist. v. Commonwealth*, 888 A.2d 616, 620 (Pa. 2005). It assumes all of the assignor's rights as well as the defenses, set-offs, and counterclaims of the obligor, provided the latter are based on facts existing at the time of the assignment. *Smith v. Cumberland Group*, 687 A.2d 1167, 1172 (Pa.Super. 1997); Restatement (Second) of Contracts § 336 (1981).

We find that the Release forecloses the Plaintiffs' claims against LDC, the Bank's assignee, for the same reasons we concluded that it barred the instant claims against the Bank Defendants. Thus, we affirm the trial court's

grant of judgment on the pleadings as to both the Bank Defendants and LDC.

In light of the foregoing disposition, Plaintiffs' final three issues involving the enforceability of the jury trial waiver are moot.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2017